[No. 19398.   Department Two.—September 12, 1894.]

NATHAN P. ROBERTS, Appellant, *v.* SHERMAN W. GEBHART et al., Respondents.

Public Land—Selection of Lieu Land—Approval by Secretary of Interior.—A selection of public land made by the state, under the act of Congress of March 3, 1853, in lieu of a thirty-sixth section, until it has been approved by the secretary of the interior, does not give to the state any legal or equitable right to the land; and without such approval neither the state nor its grantee can question any future disposition which the United States may make of the land embraced in the attempted selection.

Id.—Erroneous Order of Cancellation—Failure to Appeal—Purchase from State—Homestead—Laches.—If the state, after notice of an order of the commissioner of the general land-office canceling its selection of lieu land, fails to appeal therefrom, the order becomes final, although the reason assigned by the order for the cancellation may not have been sufficient; and a prior purchaser of such lands from the state

having notice of the order of cancellation in time to appeal therefrom, who neglects to do so, and allows another to make and perfect a homestead entry on the land without contest, is barred by laches from asserting any prior right to the land that he may have had.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*John D. Pope,* and *D. K. Trask,* for Appellant.

*Rolfe & Rolfe,* and *Goodcell & Leonard,* for Respondents.

DE HAVEN, J.—The state of California on May 16, 1885, upon the application of the plaintiff, filed with the register of the proper United States land-office its selection of the land described in the complaint in lieu of a portion of a certain thirty-sixth section. This selection was approved by the register of the United States land-office, and on July 25, 1885, the state issued to the plaintiff a certificate of purchase of said land. On July 16, 1885, the commissioner of the general land-office canceled the state's selection, giving as his reason for such action that the land in lieu of which the selection was made had already served as the basis of a prior selection by the state, and on the 23d of the same month the state was notified of such cancellation. No appeal was ever taken from this ruling of the commissioner. On July 23, 1886, the defendant Gebhart was allowed to enter the same land as a homestead entry under the laws of the United States, and on September 22, 1887, he was permitted to commute his homestead entry and to make final proof and payment for the land.

It further appears that in September, 1888, the commissioner of the general land-office discovered that the order of July 16, 1885, canceling the selection made by the state was based upon a mistake of fact, and said order of cancellation was thereupon rescinded, and the state's selection reinstated upon the records of the general land-office. The discovery of this mistake seems to have

been induced by a letter written to the commissioner by the attorney for the plaintiff some time after the month of August, 1886. November 11, 1890, the commissioner again ruled that the state's selection must be canceled because of the fact that the entry of the defendant Gebhart had been perfected after the former cancellation of such selection and before the order for its reinstatement. Upon an appeal therefrom, taken by the plaintiff to the secretary of the interior, this latter decision of the commissioner of the general land-office was affirmed, and thereafter the United States issued to the defendant Gebhart its patent for the land in controversy.

The plaintiff seeks by this action to obtain a judgment and decree that he is the equitable owner of the land, and that the defendant Gebhart holds the legal title thereto in trust for him, and that the other defendants, claiming under defendant Gebhart as mortgagees, accepted their mortgages with notice of plaintiff's equitable right to the land. The defendants recovered judgment in the superior court, and the plaintiff appeals.

1. It is argued in behalf of plaintiff that one who first initiates proceedings to acquire the legal title to public land has the superior right thereto, if he does or offers to do all that the law requires of him in order to entitle him to a patent therefor, and if by the wrong or mistake of the officers of the land department he fails to secure the legal title from the government and a patent is issued to another, with notice of his prior rights, a court of equity will, under such circumstances, protect the first applicant, by decreeing that the person who has thus taken the legal title conveyed by the patent holds such title in trust for him who was first in time in the commencement of proceedings to acquire such title. There is abundant authority for this proposition. (*Lytle* v. *Arkansas,* 9 How. 314; *Buckley* v. *Howe,* 86 Cal. 596; *Lindsey* v. *Hawes,* 2 Black, 554; *Johnson* v. *Towsley,* 13 Wall. 72; *Shepley* v. *Cowan,* 91 U. S. 330.)

But we are of the opinion that the facts of this case
are not such as to entitle the plaintiff to invoke this
equitable rule.   In the first place, the selection made
by the state upon application of the plaintiff was not
approved by the secretary of the interior, and, there-
fore, such attempted selection did not give to the
state any legal or equitable right to the land therein
described.   In the case of *Buhne* v. *Chism,* 48  Cal. 471,
this court, in passing upon the effect of such a selec-
tion, and the necessity for its approval by the secretary
of the interior, said: "We think the approval of the
secretary of the interior was essential to a valid selec-
tion and location by the state; and that it was incum-
bent on the plaintiff to show affirmatively that he had
approved it.   The act of March 3, 1853, provides in
terms that the selection shall be subject to his approval,
and we have no authority to dispense with it.   This
condition was doubtless inserted for the reason that in
the opinion of the highest officer of the land department
the land might be required in the future for public uses;
and it was intended that he should exercise his judg-
ment in the premises before the selection should be
valid."   It is true the question in that case related to the
legal title to the land there in controversy, but the reason-
ing of the court will go far to support the position that
such a selection, when the secretary of the interior
has acted upon and refused to approve it, does not
confer even an equitable right upon the state, or upon
one claiming under it, such as would authorize or
justify a court of equity in reviewing the grounds or
basis for such refusal.   It is the consent of the United
States, as manifested by the approval of the secretary
of the interior, which gives legal efficacy to the ap-
plication or selection made by the state, and without
such approval neither the state nor its grantee is in
a position to call in .question any future disposition
which the United States may make of the land em-
braced in the attempted selection.   In *Wisconsin Cent.
R. R. Co.* v. *Price Co.,* 133  U. S. 496, a case in which

the question of title to a selection of lieu land under a grant made to the state by Congress to aid in constructing a railroad was involved, the act making the grant requiring the selection to be approved by the secretary of the interior, the court held: "The act of the secretary of the interior in approving the selection of indemnity lands by a railroad land grant company to supply deficiencies in selections within the place limits is judicial, and until it is done the company has no equitable right in the selected tracts; and this rule is not affected by the fact that such a refusal was given under a mistake of law, and was subsequently withdrawn, and an assent given." The above quotation is taken from the *syllabus*, as given in the report of that case, but it correctly states the decision of the court upon the point, and the court in the course of its opinion use this language, which is entirely applicable here: "The approval of the secretary was essential to the efficacy of the selections, and to give to the company any title to the lands selected. His action in that matter was not ministerial, but judicial. He was required to determine, in the first place, whether there were any deficiencies in the land granted to the company, which were to be supplied from indemnity lands; and, in the second place, whether the particular indemnity lands selected could be properly taken for those deficiencies. In order to reach a proper conclusion on these two questions, he had also to inquire and determine whether any of the lands in the place limits had been previously disposed of by the government, or whether any pre-emption or homestead rights had attached before the line of the road was definitely fixed. . . . . Until the selections were approved there were no selections in fact, only preliminary proceedings taken for that purpose, and the indemnity lands remained unaffected in their title."

2. But even if it should be conceded that the plaintiff, by virtue of his application and the selection made by the state, is in a position to call in question the grounds of the decision of the secretary of the interior

in refusing to approve the state's selection, the conces-
sion would not help him, for, in our opinion, the action
of the secretary ought to be sustained, for the reasons
stated by him in affirming the decision of the commis-
sioner.  In that decision the secretary said: "It is
asserted by counsel for Gebhart that the state had
notice July 23, 1885, of your decision of July 16, 1885.
This is not denied.  The local officers were directed to
give the state notice; under these circumstances and in
the absence of any showing to the contrary, it will be
assumed that notice was given of that decision.  If the
state was dissatisfied with the. order for cancellation of
that date, it should have appealed, and in failing to do
so that action should have been final, although the
reason assigned in that order may not have been suffi-
cient. . . . .

"But, in any event, I do not see that the appellant,
Roberts, has any cause for complaint.  He says in his
affidavit that he knew of the order of July 16, 1885,
canceling the state's selection in August, 1886.  Grant-
ing that this was the first information he had, or the
state had, he then had sixty days in which to appeal.
This information was within forty days after Gebhart
made his homestead entry, and the land then being
subject to entry by your order under the land laws of
the United States, it was his (Roberts') privilege to con-
test the entry of Gebhart on the ground of prior settle-
ment.  Again, he allowed Gebhart to make final proof
and payment for the land a year after he had knowl-
edge of the order, without protest.  It will be assumed
that he had personal knowledge of Gebhart's claim, as
it is shown that both parties were actually residing on
the land from the date of Gebhart's entry to his final
proof.  So that it would seem appellant has slept on
whatever rights he may have had."

In these views we entirely concur.

Judgment and order affirmed.

FITZGERALD, J., and MCFARLAND, J., concurred.