## BRIGHAM CITY v. RICH et al.

### No. 1922. Decided July 17, 1908 (96 Pac. 220).

1. PUBLIC LANDS—GRANT TO STATE—RELATION OF TITLE. The enabling act (Act July 16, 1894, c. 138, 28 Stat. 107), under which Utah was organized as a state, contained a grant by Congress to the state of a stated number of acres of land for specified purposes to be selected by the state, under the direction of the Secretary of the Interior from unappropriated public lands within the state, the language of the grant being, "The following grants of land are hereby made to said state for the purposes indicated namely," followed by a statement of the objects and the number of acres for each. *Held*, that the grant was one in *praesenti*, and that on a selection by the state of land within its terms, which selection was afterward approved by the Secretary of the Interior, the state's title related back to the date of the grant, or at least to the date of such selection.[1]

2. EMINENT DOMAIN—CONDEMNATION PROCEEDINGS—INTEREST SUBJECT TO CONDEMNATION. Plaintiff city commenced proceedings to condemn a part of a tract of land the legal title to which was in the United States, and a right of way over the remainder for a public purpose, making defendant a person who was in the occupancy of the land under a contract with the state for its purchase by which the latter had agreed to, and had, in fact, selected the land under a grant made to it by Congress. The court made an order as authorized by statute, giving the city the right to enter upon and occupy the land on executing a statutory bond to pay the compensation to be awarded therefor. Subsequently, and pending the proceeding, the selection made by the state was approved; also the defendant in possession assigned his right in the land to a corporation of which he was president, which received a patent therefor from the state, and

---

[1] Brigham City v. Chase, 30 Utah 410, 85 Pac. 436.

was afterward made a party to the proceedings. *Held*, that the original defendant had an interest in the land when the proceeding was commenced, which was subject to condemnation, and was the same interest which passed to the defendant corporation and ripened into a title relating back to the contract of sale by the state subject to the rights already acquired by plaintiff under the order of condemnation and occupancy; that the only right acquired by the corporation in the land condemned was the right of its assignor to receive the compensation awarded therefor.

Appeal from District Court, Box Elder County; W. W. Maughan, Judge.

Proceeding by Brigham City against J. Y. Rich and others to condemn land for public use. Judgment for plaintiff, and defendant the Box Elder Power & Light Company appeals.

AFFIRMED.

*E. A. Walton, Booth & Lee,* and *Dey & Hoppaugh* for appellant.

*W. H. King* and *H. P. Henderson* for respondent.

FRICK, J.

On the 30th day of October, 1902, Brigham City, the plaintiff herein, a municipal corporation, commenced this proceeding in the district court of Box Elder county, Utah, against the Brigham City Electric Light Company, a corporation, J. Y. Rich, and Charles Knudsen to condemn a certain parcel of land, together with a right of way for a pipe line to be used for the purpose of constructing and maintaining thereon an electric light plant by said Brigham City, with a view of producing and furnishing lights for its own use and for the use of the inhabitants of said city. The complaint contains all the necessary allegations required in such a proceeding by the statutes of this state, together with a particular description of the parcel and strip of land sought to be condemned, and a general description of the land from which the parcel and strip of land were to be taken by

governmental subdivision, township and range. By subdivision 2, section 3594, Revised Statutes 1898, it is provided that "the names of all owners and claimants of the property" must be styled defendants. By section 3595, Revised Statutes 1898, it is provided that all persons in occupation of, or claiming an interest in, the property described in the complaint, though not named therein, may appear and defend. In the complaint the defendants above named were described as joint claimants of the property described. We make these preliminary remarks for reasons that will hereafter appear.

On motion of Brigham City, and after service of notice upon the defendants above referred to, the court on November 11, 1902, made an order under the statute, giving Brigham City the right to enter upon and occupy the parcel and strip of land upon executing the statutory bond which was duly executed, approved, and filed, and said city thereafter took possession of said parcel and strip of land, and erected its electric light plant and pipe lines thereon. No further proceedings seem to have been taken until March 9, 1904, at which time the defendants above named filed their joint answer in which they admitted the corporate capacity of Brigham City and denied all other allegations of the complaint. On September 9, 1904, the three defendants filed an amended answer, in which they assailed the jurisdiction of the court upon the ground that prior to April 30, 1903, the title, both legal and equitable, to the land in question, was in the United States; that the state of Utah on said date acquired the title to said lands from the United States; and that on August 25, 1903, the state of Utah conveyed the same to the Box Elder Power & Light Company, a corporation, and that said corporation claimed the exclusive ownership and right of possession of said land, and that it was the successor to all rights and franchises acquired by the defendants Rich and Knudsen. After this, on March 29, 1904, the court, on motion of Brigham City, the Box Elder Power & Light Company was made a party defendant to the action. On the 1st day of March, 1907, the said company entered its

appearance in the proceeding, and from thence became a defendant therein. On July 25, 1907, said company filed its separate answer, wherein it admitted the corporate existence of Brigham City, and denied all the other allegations of the complaint, and further averred, in substance, that in February, 1903, it was duly incorporated under the laws of the state of Wyoming, and that it had complied with the laws of this state relating to foreign corporations. It also assailed the jurisdiction of the court for the same reasons stated in the answer of the other defendants, and claimed exclusive ownership and right of possession to the lands described in the complaint by virtue of the conveyance from the state of Utah, as above stated. With this answer it filed a petition and bond for the removal of the cause from the state to the federal court upon the ground of diverse citizenship, and as exclusive owner of the premises. The case was removed, but subsequently remanded by the federal court to the state court. The case after pending for about five years was finally tried to the court without a jury. After a hearing the court made its findings, which are very voluminous. The findings cover all the essential facts authorizing condemnation under the statutes of this state, and we shall only refer to such special matters therein as are deemed essential to an elucidation of the points hereafter discussed. The court found that prior to the commencement of this proceeding Brigham City had commenced the construction of an electric light plant to be operated by water power; that the water to generate such power had to be conducted through a pipe line, and that a portion of such pipe line had been constructed up to a point where it became necessary to cross the lands described in the complaint; that it was necessary to cross said lands with said pipe line, and an additional parcel of said land was necessary for the erection of a power house; that Brigham City, with the view of obtaining such parcel and strip of land, for the purposes aforesaid, prior to the commencement of these proceedings, offered to purchase the same from the first three defendants named, and that they refused to sell the same, but claimed to be the owners there-

of, and that pursuant to such refusal Brigham City commenced this proceeding to condemn the land for the purposes aforesaid. It is also found that at and prior to the time this proceeding was commenced that the defendants, other than the appellant, "were the owners and were occupying and were in possession, and claimed to be the owners, occupants, and in possession," of the land described in the complaint. It is further found that on the 5th day of February, 1902, the land described in the complaint was surveyed and unappropriated, unoccupied public domain of the United States, nonmineral in character, and open to location and purchase; that on said day the defendant J. Y. Rich, of lawful age, and a citizen of the United States, entered into an agreement with the state of Utah whereby he made application for the selection by the state of Utah of said land, designating the same in an affidavit made and filed by him as grazing lands; that such selection should be made by the state of Utah under the grant of lands to it by the United States; that, "by said application and agreement, said Rich agreed to purchase said land after it had been selected by the state of Utah at the rate of $1.50 per acre on ten years' time in accordance with the provisions of the laws of this state governing land sales'' that on said date he paid the sum of $40 to the state of Utah upon said agreement. It is further found that the state of Utah in pursuance of said agreement, on said date, made a selection of said lands in writing under the grant of lands to it by the United States; that such selection was duly and regularly made according to the rules and regulations adopted by the Secretary of the Interior of the United States; that the same was on said date approved by the register and receiver of the United States Land Office at Salt Lake City, and thereafter, on the 30th day of April, 1903, said selection was approved by the commissioner of public lands and the Secretary of the Interior of the United States. It is also found that, immediately after making said agreement with the state of Utah, said Rich entered into the possession of said lands and that he and the defendants Charles Knudsen and the Brigham City Electric Light Com-

pany claimed to be the owners in possession and entitled to the possession, and were in actual occupancy of said land, when the order of occupancy was made by the court. It is further found that on the 1st day of June, 1903, and while said defendants, other than the appellant, were in possession, claiming to be the owners of said land, the state of Utah, pursuant to the agreement made with Rich on the 5th day of February, 1902, issued and delivered to said Rich a certificate of sale of said lands, in which said lands and the terms of sale were set forth, and on which the $40 by him paid on the said 5th day of February, 1902, was applied; that on said 1st day of June, 1903, said Rich assigned all his rights to and interest in said agreement and certificate to the appellant; that at said time he was the president and a director of appellant; that thereafter, on the 11th day of August, 1903, the appellant surrendered said certificate of sale, and the assignment thereof, to the state of Utah, and paid to it the unpaid portion for said land with accrued interest, and obtained a patent from said state for said lands; "that said patent was issued in execution of the contract theretofore made between J. Y. Rich and said state of Utah, and the certificate of sale issued thereon, and said assignment of said certificate of sale to said corporation," the appellant. It is further found that at the time the selection of said land was made by the state of Utah there was due to it under the grant from the United States more than the amount of land contained in said selection. It is also found that the appellant was organized as a corporation under the laws of the state of Wyoming in February, 1903; that the said Rich and Knudsen were among its incorporators, and that Rich since its organization has been, and now is, the president and a director, and that Knudsen has ever since that time been the manager and a director thereof, and that said appellant through its president and manager, both of whom during all of the time mentioned were residents of Brigham City, has had notice of all and singular the transactions and proceedings referred to in the findings. The court

also found the amount of land to be condemned to be three acres, and the full value thereof to be $55.80.

Upon the findings a decree of condemnation was entered, and the land was awarded to Brigham City upon payment of the amount aforesaid, together with the costs of the proceeding. From this decree the defendant Box Elder Light & Power Company alone appeals.

In order to avoid all misapprehension with respect to the matters presented for review, we give in full the points raised by counsel for appellant in their brief in their own language, as follows:

"(1)   Whether the land at the time the suit was begun was subject to condemnation, or whether it was the property of the United States.

"(2)   Whether the doctrine of relation has any application, and whether if it has it ought to be applied.

"(3)   Whether defendant Rich had any title when the suit was begun.

"(4)   Whether the appellant is successor in title to the defendant Rich.

"(5)   Whether the suit can be maintained upon facts which come into existence pending the suit.

"(6)   Whether (if plaintiff had a right to condemn) the compensation should be fixed at the value on October 30, 1902.

"(7)   Whether (if the plaintiff had a right to condemn) this appellant was not entitled to compensation fixed at the value of the premises at some date subsequent to the time it acquired its title?"

From the foregoing it seems clear that the findings of the court are not seriously assailed, and that appellant's counsel rely principally upon the fact that, under the facts as found, the judgment is erroneous.

It seems to us that the first point is hardly an open question for decision by this court. This precise question was raised in the case of *Brigham City v. Chase,* 30 Utah 410, 85 Pac. 436, and decided adversely to the contentions of appellant. In that case Chase was in possession of the land un-

der an agreement with the state of Utah in all respects similar to the one in question here, and the selection in that case made by the state was not approved by the Secretary of the Interior until after the proceedings to condemn had been commenced, just as in this case. Notwithstanding this, it was there held that Chase was the owner or claimant of the land within the purview of our statute. In view, however, that counsel for appellant most strenuously insist that the land in question at the time this proceeding was commenced was owned by the United States, and that neither one of the defendants had any interest therein, and that therefore the court was without power to enforce the right of eminent domain, we shall, as briefly as possible, state our reasons why we think the contentions of counsel, for appellant cannot be sustained. We remark here that the discussion of this point of necessity must cover nearly all of the other questions raised.

In the enabling act in which authority was given to the people of Utah to form a state, approved July 16, 1894 (Act July 16, 1894, c. 138, 28 Stat. 107), the Congress of the United States, among other grants provided for in the act, in section 12 made a special grant of lands to the state of Utah for certain designated purposes. The granting clause by which these lands were granted is in the following words: "The following grants of land are hereby made to said state, for the purposes indicated, namely." This language is followed by a statement of the objects of the grant and the number of acres granted, specifying each particular purpose and the number of acres granted for such purpose; the whole number of acres granted for all purposes named being 1,150,-000 acres. In connection with this, and under the same granting clause, there was also granted to this state the United States penitentiary and adjoining lands. The act also provided that "the state of Utah shall not be entitled to any further or other grants of land for any purpose than as expressly provided in this act." Section 13 of the act provides "that all land granted in quantity or as indemnity by this act shall be selected, under the direction of the Secretary

of the Interior, from the unappropriated public lands of the United States within the limits of the state of Utah." The foregoing grant of land was made because no other grant of land theretofore made by Congress to the several states applied to the state of Utah. The contention of appellant's counsel is that under the facts as found by the court the title and ownership of the lands in question were in the United States on the 30th day of October, 1902, when this proceeding was commenced; that the title to the same did not pass out of the United States until April 30, 1903, when the Secretary of the Interior approved the selection thereof by the state of Utah; and that the doctrine of relation, with regard to the passing of the title, cannot be invoked in this case. Upon the other hand, counsel for Brigham City claim that the grant made by the United States was a grant *in praesenti;* that when the state of Utah made the selection of the lands, which was approved by the Secretary of the Interior, the title thereto vested in the state of Utah, as of the date of the passage of the enabling act, or, at least, as of the date the state made the selection of the land.

It seems to us that the question in this case is not whether the doctrine of relation shall be suspended to protect the appellant, nor whether it shall be invoked to aid Brigham City; but the real question is whether those fundamental principles of law and equity which have always been applied to similar facts and circumstances shall be applied to the facts and circumstances of this case. It seems to us that the grant contained in section 12 of the enabling act was one *in praesenti,* and was based upon three conditions, namely: (1) That the lands shall be selected from the unappropriated public lands of the United States; (2) that they shall be selected within the limits of the state of Utah; and (3) that they shall be nonmineral in character. The latter was not expressed, but must be held to have been clearly implied, because the mineral lands, strictly speaking, had all been reserved to the United Sates to be disposed of under its mineral laws. The phrase that the lands "shall be selected under the direction of the Secretary of the Interior," as we view it, was

not a condition upon which the grant was made, but merely one of the means by which the lands should be identified and the grant made effective as to any particular parcel. As we have seen, the grant consisted of a specific number of acres, and within specified limits. The words of the grant are that "the following grants of land are hereby made to said state." This is not a promise or agreement to grant at some future time, nor upon the happening of some future event, nor upon any condition, but is an absolute grant *in praesenti* of a specified quantity of land. The mere fact that something remained to be done to identify the particular parcels by selecting them did not affect the grant itself. True, the legal title may in fact, have remained in the United States until the land was actually selected and identified, but such title was held in trust for the benefit of the state of Utah. The right to the quantity of land specified in the act was in the state of Utah from and after the approval thereof; but the title to any particular parcel was held in trust by the United States until selection was made by the state of Utah. We do not think it was within the power of the Secretary of the Interior to prevent the state of Utah from acquiring the title to any particular parcel of land, if such parcel fell within the terms of the grant itself. His duty was discharged, and his power exhausted, when he found that the land fell within the terms of the grant. If the land selected was not such as was granted, or if it was outside the limits of the grant, the title thereto would fail, not because the Secretary of the Interior refused to approve the selection, but because the selection was not within the original terms of the grant. To hold otherwise would be tantamount to holding that the grant was made by the Secretary of the Interior, and not by Congress. Congress, no doubt, could have directed that officer to make conveyance by patent of certain lands if he found that the conditions imposed, if any, had been complied with. Congress, however, did not do this. It made the grant, and authorized no one either to convey or to withhold a conveyance of the title.

We think the grant in question falls squarely within the

reasons given by Mr. Justice Field in *Deseret Salt Co. v. Tarpey,* 142 U. S. 248, 12 Sup. Ct. 161, 35 L. Ed. 999, where, speaking for the Supreme Court of the United States, he says:

"The grant was therefore in the nature of a 'float'; but, when the route of the road was definitely fixed, the sections granted became susceptible of identification, and the title then attached as of the date of the grant, except as to such parcels as had been in the meantime under its provisions appropriated to other purposes."

The granting clause in that case, as in this, was in the present tense. *Shepley v. Cowan,* 91 U. S. 330, 23 L. Ed. 424, *McCrecry v. Haskell,* 119 U. S. 327, 7 Sup. Ct. 176, 30 L. Ed. 408, *Langdeau v. Hanes,* 21 Wall. 521, 22 L. Ed. 606, and *Wright v. Roseberry,* 121 U. S. 488, 7 Sup. Ct. 985, 30 L. Ed. 1039, all sustain the doctrine contended for by us, which is more fully explained by Mr. Justice Field in the case quoted from above. In the cases cited above the Supreme Court of the United States clearly points out the distinction between grants like the one in question in this case and of those grants made in lieu of other grants. Grants of the latter kind are well illustrated in the following cases: *Wisconsin Central R. R. Co. v. Price County,* 133 U. S. 496, 10 Sup. Ct. 341, 33 L Ed. 687; *Humbird v. Avery,* 195 U. S. 480, 25 Sup. Ct. 123, 49 L. Ed. 286; *United States v. Missouri, etc., Ry. Co.,* 141 U. S. 358, 12 Sup. Ct. 13, 35 L. Ed. 766; *McNee v. Donahue,* 142 U. S. 587, 12 Sup. Ct. 211, 35 L. Ed. 1122. The grants in these cases were variously expressed. In some it was "there shall be granted," or "that there be granted," or that the grant was subject to the approval of some government official, as illustrated in the case of *Roberts v. Gebhart,* 104 Cal. 67, 37 Pac. 782. In construing grants the courts have also kept in mind the object and purpose Congress had in view in passing the various land grant acts, and we know of no case where the object and terms of the grant were as in this case where the Supreme Court of the United States has ever held that the grant was not one *in praesenti.* If there were such a case, we

should most cheerfully follow it, regardless of our own views upon the subject. The mere fact that a patent was issued to the state of Utah is of no importance in so far as it affects the passing of title. Again quoting the language of Mr. Justice Field in the *Tarpey Case,* 142 U. S. 251, 12 Sup. Ct. 162, 35 L. Ed. 999, in answering the contention that the title could not pass until a patent was issued he says:

"We answer that objection by saying that there are many reasons why the issue of the patents would be of great service to the patentees. . . . While not essential to transfer the legal right (title), the patents would be evidence that the grantee had complied with the conditions of the grant, and to that extent the grant was relieved from the possibility of forfeiture for breach of its conditions. . . . They would thus be in the grantees' hands deeds of further assurance of his title, and therefore a source of quiet and peace to him in its possession."

We are of the opinion, therefore, that when the selection was made by the State of Utah, which was reported to the Secretary of the Interior, and approved by him, the title to the lands became vested in the state of Utah as of the date of the enabling act in which the grant was made.

But assuming that the title did not pass as of the date of the enabling act, but was postponed until the subject of the grant( the land in question) was selected, and the selection approved, then again the title vested in the state of Utah from the time it made such a selection, and filed the same in the United States Land Office. This has been held to be the law in the case of *Ison v. Nelson Min. Co.* (C. C.), 47 Fed. 199, where the rule is stated in the syllabus as follows:

"Making a selection of lands made by the state under Act Cong. Sept. 4, 1841, filed, with the date thereof, and placing it on the files of the land office, although not signed by the register, is *prima facie* a filing of the same; and, if the selection is thereafter approved, the title thereto is vested in the state from the date of such filing."

The act upon which the foregoing doctrine is based was an act granting lands to various states which required selection just as in the case at bar. With regards to the effect of a

selection under such a grant, the Supreme Court of the United States in *Shepley v. Cowan*, 91 U. S. 307, 23 L. Ed. 424, say:

"The party who takes the initiatory step in such cases, if followed up to patent, is deemed to have acquired the better right as against others to the premises. The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants. Thus the patent upon a state selection takes effect as of the time when the selection is made and reported to the land office."

If, therefore, a patent were required to pass the title to the state of Utah, the title nevertheless would have passed to it as of February 5, 1902, when it filed its selection in the local land office at Salt Lake City with the register and receiver of that office.

But it is earnestly contended that the doctrine of relation is never applied, except to protect a title or to promote justice. This general statement may be conceded to be good law, and yet we cannot see how it helps the appellant in this case. Surely appellant is not claiming adversely to either the state of Utah or to Rich, its assignor. If it has any rights at all, such rights, not only relate to, but are directly based upon, the title acquired by the state of Utah. If appellant had made a location upon the lands in question about the time the selection was made by the state of Utah, and before the approval thereof by the Secretary of the Interior, or if it claimed under some other general grant from the United States upon which it had acted before the approval of the selection of the state of Utah, then the principle appellant invokes might have some application. But it is no such claimant. Its rights are based upon the agreement of sale made between Rich and the state of Utah, and upon the certificate of sale issued to him, and by him assigned to appellant. As the assignee of Rich, appellant stands in privity with him. (*McDonald v. Gregory*, 41 Iowa 513-516.) Appellant does not and cannot claim under any other source of title, and hence we think cannot invoke the principle of law it con-

tends for. We are of the opinion that Rich acquired a right to the whole land at the time he entered into the agreement with the state to purchase it, and at that time acquired such an interest in view of his possession which was subject to condemnation for a public use. When he thereafter, and after the selection by the state was approved, obtained the certificate of sale from the state, his rights related back to the date of his original agreement with the state. If, therefore, Rich had an interest in the land, the court had jurisdiction of the subject of the action (the parcel and strip of land sought to be condemned), and had the power to subject them to public use. But, if we should assume that Rich did not take the whole interest at the time this proceeding was commenced and that the case presents a case of cotemporaneous, overlapping, or successive ownership or diverse interests, how does this affect appellant in view of the facts and circumstances of this case? If any one had an interest in the land when this proceeding was commenced other than Rich, it was the state of Utah, and not appellant. This interest the state would continue to have until full payment of the purchase money to it, and the transfer of title by it was made. Appellant insists that, in any event, it obtained this interest from the state. That it obtained this interest in the land itself is no doubt true; but it does not follow that it likewise obtained the same interest in the parcel and strip which were condemned for a public use. The judgment of the court that the parcel and strip of land were subject to the right of eminent domain had to precede the order of occupancy made by the court in November, 1902. When this order was made and Brigham City pursuant thereto went into possession and erected its electric plant and laid the pipe line, the parcel and strip of land were appropriated to a public use, and nothing remained thereafter for the court to do save to fix the amount of compensation, and to require its payment, and the bond that was required by the court was given to secure the latter. While the state of Utah might perhaps not have been bound in view that it was not made a party to the proceeding, this is not the case with respect to.

the appellant. Appellant not only claimed under Rich's
rights, but it succeeded to them after the order of condemna
tion and occupancy had been made, and with full knowledge
thereof. After the order of condemnation had been made
by the court, no one could acquire any rights to the parcel
and strip of land condemned. The most that appellant could
be entitled to, as between it and Rich, would be the right to
receive the condemnation money for the land. When appel-
lant acquired its rights in the land, the parcel and strip con-
demned were not subject to sale and transfer, but they had
been condemned for and devoted to a public use. Appellant
could not acquire an interest in a thing which had been ap-
propriated to another use under the sovereign power of the
state. In view, therefore, that appellant might be entitled to
the condemnation money instead of Rich, it was proper to
make it a party to the proceeding, after it was made to appear
that Rich had transferred the land to appellant, and that ap-
pellant had paid the purchase price to the state therefor. (2
Lewis, Eminent Domain, section 319.) Appellant was not,
however, a necessary party for the purpose of making con-
demnation, because that had been effected when it had suc-
ceeded to Rich's rights. The title that Brigham City ac-
quired by the condemnation proceeding was from Rich, and
not from appellant. The city was not an adverse claimant to
Rich's right or title. It sought to substitute itself in Rich's
stead by what the Supreme Court of California in *Lake
Merced Water Co. v. Cowles,* 31 Cal. 215, aptly terms a
"forced sale," the title of which amounts to a quitclaim.
This forced sale had taken place when appellant succeeded
to Rich's rights, and all that remained was to determine, fix,
and pay the value of the land. While Brigham City forced
a sale, the sale was nevertheless for full value to be paid to
the owner. The mere fact that as between Rich and appel-
lant it might be entitled to the condemnation money did not,
and could not, affect Brigham City in its rights to condemn
the parcel and strip of land and devote it to a public use.
But it is urged that Rich at least had an interest less than the

whole when the condemnation proceedings were commenced, and that Brigham City in no event could condemn more than his interest. It is no doubt true that a condemner cannot obtain a greater interest than that possessed by him against whom the proceeding was instituted. The condemner can be substituted only to the interest belonging to such a person. But in whom was the interest, if not in Rich, when the proceedings were commenced? If in any one, it was in the state of Utah, and it is not here complaining. If it be conceded that the state of Utah might have complained, it does not follow that appellant may likewise do so. As we have pointed out, appellant acquired its interest subject to the order of condemnation, and hence obtained no right to the parcel and strip of land condemned. It cannot complain, therefore, regardless of what the state of Utah might or might not have been permitted to do. But, in any event, the court treated the whole matter as though Rich had owned the full beneficial interest at the time the proceedings were commenced, and fixed the compensation as the full value of the land. For wild, arid, grazing land, upon which there were practically no improvements made by either Rich or appellant, and for which Rich had agreed to pay, and for which was paid the full purchase price of $1.50 per acre, the court allowed $18.60 per acre. This, too, when no claim for any improvements was made, and no claim that by taking the parcel and strip of land for the purposes sought, it would in any way affect the value of the land not taken for the purposes for which it could be used. If appellant thus obtained full compensation for the land taken, and is in a position to obtain the money, has it not been awarded all of its constitutional rights? Brigham City had the right to condemn; the court had full power to make the order of condemnation; all the parties interested were before the court; and, full compensation having been allowed, we cannot see wherein the appellant has been made to suffer in any of its substantial rights.

The contention that the court erred in permitting in evi-

34 Utah—10

dence the certificate of sale and patent issued and delivered after the proceedings were commenced is not tenable. All these simply made clear the relationship of the parties to the transaction and the subject of the action. From them the rights and interest of the parties were shown, and all of them related to and were based upon the original agreement entered into between the state of Utah and Rich, and the appellant as his assignee. All these fall within the rule announced in *Gallup v. Armstrong*, 22 Cal. 481. While the objections raised by appellant are all technical, we nevertheless should not hesitate to reverse the judgment upon that ground, if we were convinced that any of its constitutional or statutory rights had been disregarded or invaded. Errors do not ordinarily permit of a reversal where they do not affect a substantial right.

We are convinced that the appellant has obtained all that the law allows, and that there is no error which calls for a reversal of the judgment.

The judgment of the lower court therefore should be, and accordingly is, affirmed, with costs to respondent.

McCARTY, C. J., and STRAUP, J., concur.