[Civ. No. 706.   Third Appellate District.—November 7, 1910.]

## SPENCER E. SLADE, Appellant, v. COUNTY OF BUTTE, Respondent.

PUBLIC LANDS—STATE CERTIFICATE OF PURCHASE OF LIEU LANDS—TITLE NOT ACQUIRED BEFORE LISTING TO STATE.—The grant by the United States of lands in lieu of sixteenth and thirty-sixth sections lost to the state was not *in presenti,* and could not vest title until such lieu lands were listed from the United States to the state; and a state certificate of purchase of lieu land vests no title, legal or equitable, prior to the approval of the selection by the United States, and if the selection is rejected there is no possibility of title under such certificate.

ID.—ACTION BY HOLDER OF STATE LIEU LAND CERTIFICATE TO RECOVER TAXES PAID BY MISTAKE.—The holder of a state certificate of pur-

chase of lieu land which has been rejected by the United States, and under which no possession was ever taken, and who has by mistake paid state and county taxes thereon, and who has presented a claim therefor, as required by the terms of the Political Code, which has been rejected by the board of supervisors, may maintain an action against the county under section 3804 of that code, to recover the taxes paid, with interest from the date of rejection of the claim.

ID.—CERTIFICATES OF PURCHASE OF LIEU LANDS NOT TAXABLE.—Certificates of purchase of lieu lands, apart from the land, which convey no title thereto, legal or equitable, are not taxable as property.

ID.—SUFFICIENCY OF COMPLAINT.—It is held that the complaint states sufficient facts to constitute a cause of action under section 3804 of the Political Code, and that a demurrer thereto was improperly sustained.

ID.—CERTAINTY OF AVERMENT OF TITLE—DERAIGNMENT NOT REQUIRED.— The complaint is not uncertain in not giving the names of the persons to whom the certificates of purchase were issued. It was sufficient to allege possession and ownership of the certificates by assignment, and plaintiff was not required to plead his deraignment of title.

ID.—LISTING CERTIFICATES FOR TAXATION—ABSENCE OF ESTOPPEL.— Plaintiff is not estopped from asserting the invalidity of the assessment of the certificate in the action to recover taxes paid thereon by mistake, merely because he made a verified statement in listing them for taxation. The case lacks the elements of estoppel.

ID.—PLAINTIFF MISLED—STATE THE GREATER OFFENDER—PREJUDICE ESSENTIAL TO ESTOPPEL.—The facts show that the plaintiff was misled by the action of the state in selling the certificates of purchase of lieu land, and that the state in so doing was the greater offender. It cannot be said that the state was injured or prejudiced by the payment by plaintiff of taxes upon such certificates. Injury or prejudice arising from plaintiff's conduct is of the essence of an estoppel.

ID.—EQUITABLE ESTOPPEL—EXCEPTIONAL CASES—GENERAL RULE AS TO RELIEF.—An estoppel *in pais* is of equitable cognizance, and it is only in exceptional cases that it will be enforced where equity and good conscience forbid the relief sought. This case is not of such exceptional character, but the general rule applies granting the relief sought.

ID.—RESTITUTION OF UNAUTHORIZED TAXES—AUTHORITY OF LAW.—The state, in receiving unauthorized taxes on its certificates of purchase of lieu lands, got something for nothing, and is asked to make restitution, which is expressly authorized by section 3804 of the Political Code in such a case as this.

· APPEAL from a judgment of the Superior Court of Butte County.   Warren Sexton, Judge.

The facts are stated in the opinion of the court.

Leo H. Susman, for Appellant.

Lon Bond, District Attorney, for Respondent.

CHIPMAN, P. J.—Defendant had judgment on its demurrer to plaintiff's complaint, from which plaintiff appeals.

It is alleged in the complaint that plaintiff is the holder and owner, by assignment thereof, of certain certificates of purchase, issued by the state, for lands situated in defendant county selected, in lieu of certain other lands, in the sixteenth and thirty-sixth sections; that plaintiff, for the fiscal years, ending respectively June 30, of 1905, 1906 and 1907, "delivered to the assessor of said county his sworn statement, setting forth that he was the owner of the lands described respectively in Schedule A, B and C, hereinafter mentioned, under the erroneous and mistaken belief that the said certificates of purchase issued by said state and the said conveyances made to him thereof mentioned in paragraph III of this complaint, conveyed the equitable title therein to him"; that plaintiff paid to and it was received by the tax collector of said county, on November 19, 1904, the sum of $236.48, assessed as taxes on said land for the fiscal year ending June 30, 1905; and on November 27, 1905, the sum of $224.80 for the fiscal year ending June 30, 1906, and on November 17, 1906, the further sum of $178.20 for the fiscal year ending June 30, 1907; "that the title, both legal and equitable, to all of said lands at all times was and now is in the United States of America, and that all of said lands have at all times been and now are vacant public lands"; that plaintiff "has never been in either constructive or actual possession of said lands or any part thereof, nor has he ever had, asserted or made a possessory claim thereto or to any part thereof; and that plaintiff paid all of said taxes to the tax collector of said county of Butte under the erroneous and mistaken belief that such lands were then taxable to plaintiff by said county and state." It is then alleged that

on November 9, 1907, plaintiff filed with the clerk of the board of supervisors of said county his duly verified claim for the refunding to him of said taxes, "in conformity with and for the purpose of availing himself of the provisions of section 3804 of the Political Code of the state of California"; that copy of his said claim is made an exhibit to the complaint and part thereof; that said board considered said verified claim "and at a due and regular meeting of said board of supervisors, held on the tenth day of February, 1908, did, on said last-mentioned day, first and finally reject the said claim and the whole thereof."

In the claim presented to the board of supervisors it is averred that after the issuance of said certificates of purchase "the said state of California, by its proper officers, applied to the proper authorities of the United States of America, to accept and approve the selection by the said state of the said lands in lieu of an equivalent amount of state school lands, and to list the same to the state; that thereafter the said United States refused to accept and approve the selection of any of the said lands, and to list the same to such state, and canceled the said entries thereof." In the said verified claim it is further set forth that plaintiff "did not and could not know that the selection of said lands by said state of California, would not be accepted and approved by the United States authorities and listed to the state; but that all of said taxes were collected under the mistaken belief that such lands would be so accepted, approved and listed to said state."

Judgment is demanded for the sum of $639.48, the amount of said several payments, with interest thereon from February 10, 1908, at seven per cent.

The grounds of the demurrer are: 1. Insufficiency of facts alleged; 2. That the action is barred by sections 3804 and 4076 of the Political Code; 3. That the complaint is uncertain in that it did not disclose the names of the persons to whom the alleged certificates of purchase were issued; and 4. That plaintiff is estopped from asserting the illegality of the tax assessment by reason of his having sworn to and delivered to the county assessor a list of the property involved as taxable.

Section 3804 provides that "any taxes . . . heretofore or hereafter . . . erroneously or illegally collected . . . may by order of the board of supervisors be refunded by the county treasurer."

The statute of 1909 relating to the disposition of school lands and the acquisition of lands in lieu thereof, does not apply to locations of lieu lands previously made and need not be considered.

By the act of February 26, 1859 (11 Stats. 385), the United States appropriated other lands of like quantity in lieu of the sixteenth and thirty-sixth sections or fractions thereof, granted to a state, where lost to the state in which the lands lie, by reason of having previously been settled upon "with a view to pre-emption." Subsequent statutes made like provision where the loss was by reason of settlement with a view to homestead, or where the lands are mineral, or "are included within any Indian, military, or other reservation, or are otherwise disposed of by the United States." See act of February 28, 1891 (26 Stats., p. 796; U. S. Comp. Stats. 1901, pp. 2275, 2276). The act appropriates and grants lands in lieu of the sixteenth and thirty-sixth sections so lost to the state, and provides that other lands of equal acreage "may be selected by said state or territory in which they lie." Obviously, no title passed of these so-called lieu lands by virtue of the statute alone, i. e., it was not a grant *in praesenti*, as was the grant of the school lands (sixteenth and thirty-sixth sections, in place). The statute looked to possible losses to the state, and provided that when such losses were ascertained and locations or selections were made by the state, the government would, if the land selected were unoccupied public land subject to such location, approve such selection and so officially inform the state, and thereupon title would vest in it and patent would issue by the state to the locator. The state of California passed no legislation on the subject (until in 1909) except as found in sections 3398 and 3406 (Stats. 1872), by which the surveyor general was declared to be the "general agent of the state for the location in the United States land offices of the unsold portion of . . . land granted to the state for school purposes . . . and lands in lieu thereof," and "whenever application is made to him for any portion of the lands mentioned

in section 3398," he must "communicate with the United States land office, and ask that the lands described in the application be accepted in part satisfaction of the grant under which it is sought to be located."

Under these statutes the United States land department and the surveyor general of California evolved a method of giving practical effect to the law, in pursuance of which all lieu locations have been made, those of plaintiff presumably included. Briefly, this method may be thus stated: A B makes application to the state surveyor general, in which he sets forth, under oath, certain required facts and states that he desires to purchase the land described therein, pursuant to the provisions of title VIII of the Political Code (in which are found sections 3398 and 3406) ; an examination is made by the surveyor general of his records and if the land appears to be unoccupied and open to entry in the United States land office of the district in which the land lies, he issues a certificate of purchase to the applicant, and later makes out an application to the United States land office to have the land applied for listed to the state in lieu of certain described school land (sixteenth and thirty-sixth sections), which he designates as the base for the listing by the government of the land applied for. This application is sent through the local land office of the district and is there indorsed by the register and receiver, certifying that the application has been "filed and accepted, subject to future approval; that there is not of record in this office any adverse filing entry, or claim to the land selected by the state." The general land office at Washington, finding that the base is valid and that the land applied for is free and open to entry, approves the application and lists the land to the state. Thereupon by operation of the law of the United States and of the state of California, the title to the school land is relinquished to the United States and the title to the land selected in lieu thereof passes to the state.

It was held by our supreme court, in *Roberts* v. *Gebhart,* 104 Cal. 67, [34 Pac. 782], in a case where the general land office refused its approval, that the certificate of purchase issued on an application for lieu lands, followed by a selection made by the state, "does not confer even an equitable right upon the state, or upon one claiming under it, such as

would authorize a court of equity in reviewing the grounds or basis for such refusal." In *Allen* v. *Pedro,* 136 Cal. 1, [68 Pac. 99], it was said: "If plaintiff sought to get the land as lieu land, he acquired no title from the state, because the latter could get no title until the land had been selected, and the selection approved by the United States land department, and the land listed to the state." (Citing *Roberts* v. *Gebhart,* 104 Cal. 67, [37 Pac. 782]. See, also, same case, 138 Cal. 202, [70 Pac. 1128].)

The term "property" includes all matters and things real, personal or mixed, "capable of private ownership"; and the term "real estate" includes "the possession of, claim to, ownership of, or right to the possession of land" (Pol. Code, sec. 3617); and possessory rights to and possession of public land have been held taxable in this state, notwithstanding the compact contained in the act of Congress admitting California into the Union, exempting public lands of the United States from taxation. (*People* v. *Donnelly,* 58 Cal. 144.) But it was held in that case that "land which has been such can be taxed only when a patent has issued, or when the private proprietor has acquired a 'perfect equity.' " Here not only the averments of the complaint are that plaintiff has never been in possession, has made no possessory claim and has never claimed the right of possession, but, as we have seen, neither the legal nor equitable title vests in the state until the United States has approved the selection by the state and listed it to the state. It was held in *People* v. *Frisbie,* 31 Cal. 146, that the terms "claim to land" mean not only an assertion to title, "it involves also the idea of an actual possession of the land claimed."

It was held by the supreme court of North Dakota that the selection must be approved before the lands become taxable. (*Jackson* v. *La Moure County,* 1 N. D. 238, [46 N. W. 449]; *Wells County* v. *McHenry,* 7 N. D. 246, [74 N. W. 241].) These were cases of indemnity lands under grants to railroad companies, but they discuss the question here involved.

Section 3804, as amended in 1889, and as now existing, was interpreted in *Hayes* v. *County of Los Angeles,* 99 Cal. 74, [33 Pac. 766], which was a case where the property had been twice assessed and the double tax paid. The court said: "That the object of the statute was to obviate these diffi-

culties (pointed out as existing under the statute previous to its amendment), and provide a means for the recovery of moneys collected by mistake and to which the county and state have neither a moral nor a legal right, is apparent." Again: "Section 3804 was enacted to do justice to a class of cases where, but for its provisions, the application of the doctrine of *caveat emptor* would work a hardship to citizens who had paid money which it was inequitable for the county to retain." It was also held that the word "may," as applied to the duty of the board of supervisors, means "shall." In *Pacific Coast Co.* v. *Wells*, 134 Cal. 471, [66 Pac. 657], plaintiff had by mistake, in its verified statement made of its property, shown that its assessable property was greater than it was in fact. Plaintiff voluntarily paid the tax and upon the discovery of the mistake made claim for the excess paid. *Hayes* v. *County of Los Angeles*, 99 Cal. 74, [33 Pac. 766], was relied upon and followed as well as cases in other jurisdictions, and plaintiff was held to be entitled to recover. Among other things, the court said: "If the legislature had intended to restrict the power of the board to refund to cases where the taxes had been involuntarily paid or paid under protest, it would have so said, as it did in the cases brought under section 3819, where relief is given by action in the courts." In *Palomares Land Co.* v. *County of Los Angeles*, 146 Cal. 530, [80 Pac. 931], the section was held to authorize the recovery of money erroneously paid on redemption from tax sale.

Respondent urges with apparent sincerity that the certificates of purchase, apart from the land, were property and assessable as such. There is nothing in the point. The assessment purported to be of the land and not of the pieces of paper representing whatever rights plaintiff had in the land. If the state acquired neither legal nor equitable title to or right in the land it would be absurd to hold that the certificates themselves, which conveyed nothing, would be taxable.

We think the complaint states sufficient facts to constitute a cause of action under section 3804.

Section 4076 of the Political Code relates to the form of the claim. In the present case the facts were very fully stated in the claim presented to the board and substantially

complied with the statute. Nor do we see any reason for holding that section 3804 is a bar to the action.

The point that the complaint is uncertain in not giving the names of the persons to whom the certificates of purchase were issued is without merit. Plaintiff alleged possession and ownership of the certificates by assignment and this was sufficient. He was not called upon to plead his deraignment of title.

One question only remains: Is plaintiff estopped from asserting the invalidity of the assessment because he filed with the assessor a verified statement of the property in question for taxation? The answer must be in the negative. The transaction lacks the necessary elements of estoppel. Besides, if the facts bear the semblance of estoppel, they show the state to be the greater offender, for it was through the promise of the state that the land could be acquired under lieu location that plaintiff and his predecessors parted with their money. If anyone was misled it was the plaintiff. However, we cannot perceive that the state has been injured or prejudiced by plaintiff's having paid the tax; and injury or prejudice resulting from plaintiff's conduct is of the essence of estoppel. Furthermore, estoppel is of equitable cognizance and only in exceptional cases is it allowed where equity and good conscience forbid, and this case furnishes no exception to the general rule. The simple fact is, the state got something for nothing and it is asked to make restitution. This, section 3804 authorizes it, in a case such as this.

The judgment is reversed and the trial court is directed to overrule the demurrer.

Hart, J., and Burnett, J., concurred.