**CONSOLIDATED ENGINEERING CORP. v. NESBIT.**

**CONSOLIDATED ENGINEERING CORP. v. COLVIN.**

**CONSOLIDATED ENGINEERING CORP. v. BRADBURN.**

Nos. 12582–12584.

United States District Court
S. D. California, Central Division.

Oct. 10, 1951.

Latham & Watkins, Austin H. Peck, Jr., Los Angeles, Cal., for plaintiff.

Willis Sargent and Sidney H. Wyse, Los Angeles, Cal., for defendants.

WESTOVER, District Judge.

The plaintiff in the above entitled actions had among its personnel some sixteen key employees. Being unable to pay its employees additional compensation to induce them to remain in the employ of plaintiff corporation in such key positions, in lieu thereof the corporation gave to each of its sixteen key employees an option agreement, covering a period of five years, which gave

to these key employees the right to purchase, at a price of $5.00 per share, certain shares of plaintiff corporation's common capital stock, having a par value of $1.00 per share.

Among other things, it was provided that the option agreement should not be effective for any purpose unless and until proper permits were obtained from the Commissioner of Corporations of the State of California, authorizing the granting by said corporation of the options and authorizing the issuance of the stock of plaintiff corporation pursuant to the provisions of said options; and the options were terminated if these employees did not remain in the service of plaintiff corporation.

Plaintiff filed petitions with the Corporation Commissioner of the State of California, asking for authority to grant the options herein mentioned and to issue the stock, if and when the options were exercised. The petitions were granted by the Corporation Commissioner.

There is nothing in this case to indicate that defendants were anything but conscientious, honest employees. They were in no respect stock market manipulators. Evidence in the case indicates that the idea of the stock option contracts originated with Philip S. Fogg, President of Consolidated Engineering Corporation, prior to the listing of plaintiff's stock on any national exchange, as a means of retaining the services of the sixteen key men and as incentive to these men to use their best efforts for the benefit of the corporation. Included among the sixteen were the three defendants in these actions, they being the only employees holding the conventional titles of officers of the corporation.

At the time the option agreements were executed they had little value. After the options acquired a value (because of the rise in value of the stock) a meeting of the optionees was called by Mr. Fogg, at which meeting the tax problem incident to the exercise of the option agreements was brought to the attention of the option holders and suggestion was made that they be exercised annually to lessen the impact of tax accruing upon exercise of an option. The fact that optionees did not have additional resources sufficient to pay the tax and purchase stock, without concurrently selling a portion of their purchased stock, was discussed at the meeting. It was then made known to the optionees that they could (through a brokerage house of which one of the directors of plaintiff corporation was a partner) effect sales of stock in order to procure funds to take up their options.

The various employees commenced taking up options, in most cases using the forms prepared or suggested by plaintiff corporation. At no time from the date of the first listing of the stock on an Exchange to the date of the filing of the actions herein did the management of the corporation, or anyone else, issue any bulletin, circular, letter, notice or any other document, calling the employees' attention to restrictions upon them under the Securities Exchange Act relative to purchase and sale of stock within the six months' period.

Subsequent to the making of the option agreements, the stock of Consolidated Engineering Corporation was listed upon a Stock Exchange and thereby came under the provisions of the Securities Exchange Act, 15 U.S.C.A. § 78a et seq. After the purchase and sale of the stock which is the subject matter of these actions one, Pellegrina, a stockholder of plaintiff corporation, demanded that plaintiff corporation commence an action under Title 15, § 78p(b), to recover for the corporation the profits realized by defendants.

It appears that Pellegrina purchased ten shares of plaintiff corporation's stock in September, 1950, and within two weeks or a month after said purchase made demand that the corporation institute suits against the defendants named in these actions. Inasmuch as Pellegrina was not a stockholder at the time the option agreements were made and had purchased only ten shares of the corporation's stock and then immediately made demand that this action be commenced, it could be assumed that after learning of the profits realized by defendants herein he made his stock purchase for the sole purpose of making demand that these actions be instituted to recover for the corporation profits realized by defendants.

Section 78p of Title 15 U.S.C.A., provides in part as follows: "For the purpose of preventing the unfair use of information * * *, any profit realized by him (beneficial owner, director or officer) from any purchase and sale * * * within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction * * *. Suit to recover such profit may be instituted at law or in equity * * *."

■ It will be noted from the above that Section 78p does not make the purchase and sale of stock unlawful or irregular. It provides only that the profits, if any, shall be recovered by the corporation. Purchase and sale of stock connected with a debt previously contracted is exempt under the statute. The purpose of this section is "preventing the unfair use of information".

There is no contention here that defendants in any way unfairly used information which they might have obtained as officers, directors or beneficial owners. In fact, it is stipulated that defendants at all times acted fairly and in good faith and were not stock manipulators in the usual sense of that term. Inasmuch as option agreements had been given to sixteen employees, it would seem entirely unfair to impose a penalty upon the three defendants herein, when it is impossible to impose a like penalty upon the other key employees who did and performed the same acts as complained of in these actions but who did not happen to have conventional titles of "corporation officials."

The sole excuse for filing these actions was that defendants were "officers" of the corporation. Defendant Bradburn was vice-president, in charge of engineering; defendant Nesbit was vice-president, in charge of production, and defendant Colvin was treasurer. Because the other employees who had similar option agreements did not happen to be officers or directors of the corporation, they could exercise their options to purchase, and sell with immunity.

It would be extremely inequitable to penalize these three who held options and not similarly penalize the others. According to the section, its purpose is to prevent "unfair use of information". There is no imputation that these defendants or any of them unfairly used any information obtained through their relationship to plaintiff corporation.

■ It would seem to the Court that, under the circumstances as outlined, the corporation should now be estopped to recover profits of a transaction which the corporation itself initiated and set up and which it (at least inferentially) assured defendants was valid. However, plaintiff corporation contends that the statute indicates a broad public policy which should not be subject to waiver or estoppel, citing to the Court Slade v. County of Butte, 14 Cal.App. 453, 112 P. 485, to the effect that estoppel will not be enforced, unless in those exceptional cases where equity and good conscience forbid the relief sought.

If ever there was a case where equity and good conscience "would forbid the relief sought," it seems to the Court that the necessary facts are present in these cases at bar, inasmuch as it is established that in lieu of paying additional salary to retain the services of these employees, the option agreements were given; that the transaction was initiated and handled by plaintiff corporation herein and, before consummation, had to be approved by the Corporation Commissioner of the State of California; that nothing was ever intimated to any of the defendants that if they exercised their options and purchased any stock, reselling within six months at a profit, they would have to pay to the corporation the profits realized. As all the parties were acting in good faith, deeming the agreement valid, it would seem most inequitable now, after the corporation has had the benefit and advantage of the option agreements for several years, to allow plaintiff corporation to recover from defendants in accordance with the prayers of its complaints.

The purpose of the law as set forth in the statute is to prevent unfair use of information. As stated before, when the option agreements were executed the stock

in question was outside the purview or scope of the Securities Exchange Act. The agreements were valid in every way. There were no inhibitions of any kind. Subsequent to the making of the option agreements, the stock was listed. The listing of the stock brought it within the purview of Section 78p, Title 15 U.S.C.A.; however, there is nothing to indicate that the fundamental purpose of the Act has been violated in any way.

Neither plaintiff corporation nor the Securities Exchange Commission disputes that this is an equitable proceeding; consequently, the Court is free to apply equitable doctrines coextensive with the common law and used for centuries to alleviate hardship of rules of general application which result in injustice in exceptional cases. The hard rule of the law might indicate that judgment should be rendered in favor of plaintiffs, but equity dictates that judgment should be in favor of the defendants herein.

Judgment is ordered for the defendants; Findings of Fact and Conclusions of Law to be prepared by defendants.