[S. F. No. 7875.    Department Two.—March 12, 1918.]

## L. E. WHITE LUMBER CO (a Corporation), Appellant, v. COUNTY OF MENDOCINO, Respondent.

Taxation—Interest in Land—Not Limited to Title in Fee.—The property in land which is taxable is not limited to the title in fee, but may include any usufructuary interest, or even a mere right of possession.

Id.—Action to Recover Taxes—Interest in United States Lands—Illegality of Assessment—Pleading.—In an action to recover taxes paid on lands of the United States selected under the act of Congress of June 4, 1897, on the ground that the same were illegally assessed, the complaint is fatally defective in that it fails to show that plaintiff is without an assessable interest, where it alleges that proper certificates for the selected lands have been issued by the United States, but that plaintiff has never been in the actual or constructive possession thereof, that the lands have been in litigation ever since the issuance of the certificates, and that, therefore, the proper authorities refuse to approve the selections or to issue patents.

APPEAL from a judgment of the Superior Court of Mendocino County.    J. Q. White, Judge.

The facts are stated in the opinion of the court.

M. H. Iversen, and Preston & Preston, for Appellant.

Hale McCowen, Jr., District Attorney, for Respondent.

MELVIN, J.—Judgment was given against plaintiff after the court had sustained the demurrer to its second amended complaint without leave to amend.

The suit was one for the return of taxes paid during a number of years by plaintiff to the proper authorities of the county of Mendocino. By the plaintiff's pleading it appears that F. A. Hyde and F. A. Hyde & Company, prior to May 8, 1903, selected certain enumerated lands in Mendocino County with forest lieu base under the act of Congress of June 3, 1897, and proper certificates for the lands so selected were issued by the government of the United States; that the claim of F. A. Hyde and F. A. Hyde & Company to a portion of said land was canceled by order of the commissioner of the general land office of the United States and homestead entries were allowed on said portion to persons other than the original selectors and the plaintiff; that the parts of the lands included in the original selection, certificates to which were not canceled by the commissioner's order, have been involved in litigation ever since the original selection was made; that plaintiff acquired and since the 8th of May, 1903, has held an undivided two-thirds interest in all of the title of every sort acquired by the original selectors; and that from and including the year 1904 to and including the year 1910 plaintiff was assessed for and paid taxes on an undivided two-thirds interest in the lands. These payments, as it is averred further, were made "under the erroneous and mistaken belief that the said certificates so issued by the United States for the said lands conveyed the equitable title to the plaintiff and that such lands were then and there taxable to the plaintiff." Plaintiff also denied actual or constructive possession of the lands or any part of them at any time. The pleading further recites that on February 1, 1912, plaintiff filed with the clerk of the supervisors of Mendocino County a verified claim for the refunding of said taxes paid for the fiscal years 1904 to 1910, amounting to $2,062.21; that of this amount the sum of $1,022.36 was paid within three years prior to the filing of plaintiff's claim, and that the board of supervisors of Mendocino County allowed on plaintiff's claim only $209.57 for taxes for the fiscal years 1908, 1909, and 1910 on the lands as to which certificates of selection had been canceled by the commissioner. By averment of a second cause of action plaintiff set up a payment of $244.40 for the first installment of taxes for the fiscal year 1911; a similar demand for repayment; and an allowance by the board of supervisors for $38.80 for the same reason which caused the

other allowance. Both causes of action set out the fact that
plaintiff had applied to the proper authorities of the United
States for acceptance and approval of the selections except-
ing the lands regarding which the certificate had been an-
nulled, but (to quote directly from the pleading) "the said
United States has refused and now refuses to approve the
said selections on any of said lands or to issue patents there-
for, on the ground that the said selections are in litigation
and it cannot be determined by the said authorities whether
or not they will finally approve said selections or cancel the
same."

The demurrer of defendant pleaded insufficiency of facts
averred and the bar of section 3804 of the Political Code.

Undoubtedly the bar of the statute was effective against
all except the taxes paid within three years of the filing of
the verified claim with the board of supervisors. (Sec. 3804,
Pol. Code.)  But we need not discuss the effect of this limita-
tion, because the complaint is radically defective in its failure
to allege sufficiently that the assessments were illegal. It is
true that the pleading set forth a statement that plaintiff has
never been in the actual or constructive possession of the
lands and that the property belongs to the United States of
America. It also contains averments that the land is in liti-
gation and that the proper authorities refused to approve the
selections or to issue patents for any of the lands. But this
is not equivalent to a statement of facts showing that plain-
tiff is without assessable interest in the property.

Undoubtedly the lands of the government are exempt from
the burdens of taxation, and while it is true that the pleading
before us contains an averment of a conclusion that the gen-
eral government owns the property, it also sets forth the issu-
ance by the government of "proper certificates" for the
selected lands to plaintiff's predecessors. The sort of prop-
erty in land which is taxable under our laws is not limited to
the title in fee. It may include any usufructuary interest
or even a mere right of possession. (*State* v. *Moore,* 12 Cal.
56.) An assessable interest need not be a complete equitable
title. By the act of June 4, 1897, under which the selections
were made by plaintiff's predecessors, the United States gov-
ernment made a continuing offer to exchange lands outside
of a forest reservation for those held by settlers within a
reservation. The exchange could be initiated by the sur-

render to the land office on the part of the settler of his patent or deed to the base land and the selection of realty in lieu of that relinquished. (*Roughton* v. *Knight,* 156 Cal. 123, [103 Pac. 844].) Respondent's theory is that in all of the selections made by appellant in which it met the terms of the offer to trade it acquired an equitable interest subject to assessment. In this behalf respondent quotes as follows from *Witherspoon* v. *Duncan,* 71 U. S. (4 Wall.) 210–218, [18 L. Ed. 339] : "The contract of purchase is complete when the certificate of entry is executed and delivered, and thereafter the land ceases to be a part of the public domain. The government agrees to make proper conveyance as soon as it can, and in the meantime holds the naked legal fee in trust for the purchaser, who has the equitable title."

We quite agree with respondent that under this authority appellant has pleaded an assessable interest and has failed to contradict such allegation by the mere conclusion set forth in the complaint that it has no interest and that the United States has complete title to the assessed property.

The case of *Witherspoon* v. *Duncan,* cited above, is in many of its aspects similar to the one at bar. In that case the supreme court of the United States was considering an effort made to set aside a tax title arising from a failure to pay taxes levied by the state of Arkansas after a certificate of entry had been issued by the land office but before a patent had been obtained. The supreme court held that after a certificate of entry had been obtained the lands could in no just sense be regarded as public, because if they were subject to sale the government had no power to revoke the entry and withhold the patent. In the opinion of the court delivered by Mr. Justice Davis the following language was used: "As the patent emanates directly from the President, it necessarily happens that years elapse, before, in the regular course of business in the General Land Office, it can issue; and if the right to tax was in abeyance during this time it would work a great hardship to the State; for the purchaser, as soon as he gets his certificate of entry, is protected in his proprietary interest, can take possession, and make valuable and lasting improvements, which it would be difficult to separate from the freehold for the purpose of taxation. If it was the purpose of the acts of Congress, by which the new States were admitted into the Union, to prohibit taxation until the patent

was granted, the national authority would never have suffered, without questioning it, the universal exercise of the power to tax on the basis of the original entry." Summing up the learned justice said: "The power to tax exists as soon as the ownership is changed, and this is effected when the entry is made on the terms and in the modes allowed by law."

The complaint contains the allegation that the lands are and ever since the selections of its predecessors have been in litigation, but there is no allegation regarding the details nor the merits of the controversy or controversies involved. The mere fact that the title is in dispute does not exempt the land from taxation. (*Herrick* v. *Sargent,* 140 Iowa, 590, [132 Am. St. Rep. 281, 117 N. W. 751]; *Northern Pacific R. R. Co.* v. *Patterson,* 154 U. S. 130–133, [38 L. Ed. 934, 14 Sup. Ct. Rep. 977, 978].) In the latter case the rule was thus stated by Mr. Chief Justice Fuller, who delivered the court's opinion: "If the legal or equitable title to the lands or any of them was in the plaintiff, then it was liable for the taxes on all or some of them, and the mere fact that the title might be in controversy would not appear in itself to furnish sufficient reason why plaintiff should not determine whether the lands or some of them were worth paying taxes on or not."

These authorities sufficiently support the ruling of the court in sustaining the demurrer. It is true that according to the authority of *Durham* v. *Hussman,* 88 Iowa, 29, [55 N. W. 11], which on appeal is reported in *Hussman* v. *Durham,* 165 U. S., at page 144, [41 L. Ed. 664, 17 Sup. Ct. Rep. 253], an intending purchaser from the government does not acquire an equitable interest in property until he has done all that is required of him. But in the present case there is no pleading to the effect that the holder of the certificate issued by the land office has not complied with all the legal requirements entitling it to a patent. In *Durham* v. *Hussman* it appeared that the commissioner of the land office had actually suspended all proceedings under the entry and had canceled the bounty land warrant under which the location had been made before the levy of the state tax upon which the unsuccessful litigant sought to found his alleged tax title.

Appellant cites *Allen* v. *Pedro,* 136 Cal. 1, [68 Pac. 99], *Roberts* v. *Gebhart,* 104 Cal. 67, [37 Pac. 782], and *Slade* v. *County of Butte,* 14 Cal. App. 453, [112 Pac. 485], to support the contention that until the Secretary of the Interior

approves the selection, the legal and equitable title are both in the United States and are not taxable. But it is to be remembered that in each of these cases the certificates of purchase were issued by the state of California for lands which belonged to the United States, but which had never been confirmed to the state. In the case at bar the certificates had been issued by the representative of the general government, the holder of the fee.

The case of *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301, [47 L. Ed. 1064, 23 Sup. Ct. Rep. 692], is not in point to establish the asserted principle that no taxable title nor equity arises until the application of the selector of lieu lands has been confirmed by the Secretary of the Interior. It was merely held in that case that the complainant did not have a complete equitable title which would entitle it to maintain an action enjoining another from interfering with its possession of the land involved.

Our conclusion, based upon the foregoing discussion, renders unnecessary any analysis of the other questions raised in the briefs.

The judgment is affirmed.

Wilbur, J., and Victor E. Shaw, J., *pro tem.*, concurred.