[No. B043779. Second Dist., Div. Two. Apr. 5, 1990.]

MITSUI FUDOSAN (U.S.A.), INC., Plaintiff and Respondent, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**COUNSEL**

De Witt W. Clinton, County Counsel, and Albert Ramseyer, Deputy County Counsel, for Defendants and Appellants.

Allen, Matkins, Leck, Gamble & Mallory, Patrick E. Breen and John K. McKay for Plaintiff and Respondent.

Ajalat & Polley, Richard J. Ayoob, Charles R. Ajalat, Terry L. Polley, McCutchen, Black, Verleger & Shea, John J. Curtis and Judd L. Jordan as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

GATES, J.—Between 1980 and 1982, Mitsui Fudosan (U.S.A.), Inc. (Mitsui), acquired three parcels of real property in downtown Los Angeles subject to the Redevelopment Plan for the Central Business District Redevelopment Project of the City of Los Angeles. Although this plan limited the density of Mitsui's planned development to a maximum floor area ratio of 6:1, i.e., 6 square feet of building area to 1 square foot of parcel area, it nevertheless permitted that level to be exceeded, subject to certain conditions, through the transfer of unused floor area ratios from other parcels within the project area. Making use of these so-called transferable development rights or "TDRs," Mitsui in 1983 purchased from several adjacent landowners at a cost of $8,209,000 sufficient TDRs to permit it to construct an additional 490,338 square feet of building area, more than doubling the density which otherwise would have been permitted.

Beginning in the 1984-1985 tax year, the county assessor increased Mitsui's base assessment by $8,209,000 to reflect the value of the TDR transactions. This resulted in an increase in property taxes totaling $266,821.10 for the 1984-1986 tax years. Mitsui paid the taxes under protest and initiated this action after its application to the Assessment Appeals Boards of the County of Los Angeles was summarily denied without prejudice because it raised a purely legal issue.

The trial court granted Mitsui's motion for summary judgment and ordered the challenged payments refunded. In making its ruling, however, the trial court recognized that its decision would merely serve as the basis for an appeal since the parties were seeking to resolve a legal issue of first impression, i.e., whether TDRs constitute real property interests the value of which may be assessed upon transfer.[1]

Unless specifically exempted by the state Constitution or federal law, all property in California is taxable "in proportion to its full value." (Cal.

---

[1] As the court expressed it, "Let me say this: No matter which way I rule this is going up on appeal and, obviously, what I do here is going to have little impact on what the Court of Appeal decides to do."

Const. art. XIII, § 1(b); Rev. & Tax. Code, § 201.)[2] For purposes of taxation " '[p]roperty' includes all matters and things, real, personal, and mixed, capable of private ownership." (§ 103.) "Real estate" or "real property," in turn, encompasses "[t]he possession of, claim to, ownership of, or right to the possession of land." (§ 104, subd. (a).)

The word "land" is not specifically defined by the Revenue and Taxation Code or related property tax regulations. However, no purpose would be served by attempting to force relatively recent three-dimensional land use concepts such as TDRs into one of the cubicles reserved for traditional interests in real property. (See *Lynch* v. *State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 99 et seq. [210 Cal.Rptr. 335].) Virtually since its inception it has been the law of this state that "[t]he sort of property in land which is taxable under our laws is not limited to the title in fee" (*L. E. White Lumber Co.* v. *Mendocino* (1918) 177 Cal. 710, 712 [171 P. 799]), "but is sufficiently comprehensive to include any usufructuary interest . . . ." (*State of California* v. *Moore* (1859) 12 Cal. 56, 70.)

Whether or not TDRs are actually embodied within the definition of air rights, which already have been classified under the heading "land" (Cal. Code Regs., tit. 18, § 124), or represent something entirely separate, they are appropriately viewed as one of the fractional interests in the complex bundle of rights arising from the ownership of land. As the density in urban areas increases, diminishing the number of sites available for new construction, the ability to exploit air space in various ways to achieve vertical expansion becomes essential. Property rights which evolve as a means of furthering such goals are properly subject to taxation.

The transactions in the instant case bear all the hallmarks of a transfer of real property. The owners of the donor parcels received valuable consideration, over $8 million, in fact, in return for divesting themselves of a portion of their own property interests, interests which are now possessed and owned by Mitsui.

In addition, in conjunction with the conveyances escrows were opened, escrow instructions and purchase and sale agreements were executed, title reports and insurance issued, property surveys were obtained and covenants restricting development were recorded against the donor parcels. The agreements memorializing these dealings variously stated that the TDRs "shall

---

[2] All further constitutional references are to the California Constitution and all statutory references are to the Revenue and Taxation Code if not otherwise indicated.

be appurtenant to and used for the benefit of the real property owned by [Mitsui]" and that they "shall run with the land and shall be binding upon Seller, as owner of Seller's Parcel and upon any future owners, and/or encumbrancers of Seller's Parcel, their successors, heirs or assigns and shall inure to the benefit of [Mitsui], as owner of the Benefited Parcel and each succeeding owner and/or encumbrancer thereof and their respective successors, heirs and assigns."

We find unpersuasive Mitsui's suggestion that it merely purchased some type of "zoning variance." As the county quite correctly observes, "[i]n a typical situation of rezoning, an owner does not negotiate with nearby property owners for the acquisition of property rights. A change in zoning does not entail title reports, sales contracts, brokerage commissions, etc." The mere fact that future zoning changes might diminish the value of a TDR is essentially irrelevant since the same fate could befall any property purchased for purposes of development.

Similarly, Mitsui does not benefit by directing our attention to the fact that in 1985 the Legislature took no action on Assembly Bill No. 2224. As it notes in its brief, a committee report regarding this bill pointed out that "the statutes are silent with respect to the sale of 'easements or appurtenant rights' (water rights, air rights and density or development credits)."[3] This conjoining of TDRs with such historic real property interests as easements and water rights weakens, rather than strengthens, Mitsui's position here. Furthermore, of course, by whatever action our legislators might have taken with regard to this bill, they could not thereby have made property either taxable, or free from taxation, in a manner inconsistent with the mandate provided by articles XIII and XIII A of our Constitution.

■ Having determined TDRs constitute a taxable property interest, it is clear their conveyance marks a taxable event within the framework of Proposition 13 (art. XIII A), which provides that "[t]he maximum amount of any ad valorem tax on real property shall not exceed One percent (1%) of the full cash value of such property" (art. XIII A, § 1, subd. (a)) and specifies that "full cash value means the county assessor's valuation of real property as shown on the 1975-76 tax bill under 'full cash value' or, thereaf-

---

[3] Apparently at present the only direct statutory reference to property interests of this type is found in section 61 which, in relevant part, provides: "Except as otherwise provided in Section 62, change in ownership, as defined in Section 60, includes, but is not limited to: (a) The creation, renewal, sublease, assignment, or other transfer of the right to produce or extract oil, gas or other minerals regardless of the period during which the right may be exercised. The balance of the property, other than the mineral rights, shall not be reappraised pursuant to this section." (See also *Lynch* v. *State Bd. of Equalization, supra,* 164 Cal.App.3d 94, 103.)

ter, the appraised value of real property when purchased, newly constructed, *or a change in ownership has occurred after the 1975 assessment.*" (Art. XIII A, § 2, subd. (a), italics added.)

For purposes of revaluing property, a "change in ownership" is characterized by "a transfer of a present interest in real property, including the beneficial use thereof, the value of which is substantially equal to the value of the fee interest." (§ 60; Cal. Code Regs., tit. 18, § 462(a)(2).) "[The present interest] element is necessary to protect a variety of contingent or inchoate transfers from unintended change in ownership treatment, including future interests, revocable transfers and transfers with retained life estates"; "[b]eneficial use is necessary to protect custodianships, guardianships, trusteeships, security interests and other fiduciary relationships from unintended change in ownership treatment"; and "[t]he 'value equivalence' test is necessary to determine who is the primary owner of the property at any given time," e.g., in the case of transfers involving leaseholds. (Assem. Rev. & Tax. Com., Rep. of Task Force on Property Tax Admin. (Jan. 22, 1979) pp. 39-40.)

The transactions here under review were intended to, and did, involve the transfer of a most significant present, beneficial property interest.[4] The terms of that transfer, as well as the price paid by Mitsui, amply support an inference that the entire fee interest in the TDRs was transferred. In the absence of substantial and convincing evidence to the contrary, the assessor was entitled to rely upon the purchase price for purposes of determining their full cash value. (§ 110; Cal. Code Regs., tit. 18, § 2.) Similarly, as the assessor's counsel acknowledged at oral argument, the base year value of the sellers' remaining properties should be reduced in the same proportion that the value of their TDRs bore to the fair market value of their land and improvements as a whole on the date ownership changed.

The judgment is reversed and the cause remanded to permit the superior court to enter judgment reinstating the assessment previously determined by the county assessor. However, since the trial court's remarks make clear this was a test case designed to obtain appellate determination of a legal

---

[4] Reassessment, of course, is not required when relatively minor transfers occur. "Except for a joint tenancy interest described in subdivision (f) of Section 62, when an interest in a portion of real property is purchased or changes ownership, only the interest or portion transferred shall be reappraised. A purchase or change in ownership of an interest with a market value of less than 5 percent of the value of the total property shall not be reappraised if the market value of the interest transferred is less than ten thousand dollars ($10,000) provided, however, that transfers during any one assessment year shall be cumulated for the purpose of determining the percentage interests and value transferred." (§ 65.1, subd. (a).)

question of first impression, it is appropriate that each party bear its own costs on appeal.

Roth, P. J., and Fukuto, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 18, 1990.