LEHAN, Judge.
We affirm the trial court’s ruling that transferable development rights (TDRs) are not real property subject to assessment for ad valorem taxation.
TDRs have been described as follows: “Basically, a TDR allows that development rights, attributable to one piece of land, be transferred to another.” City of Hollywood v. Hollywood, Inc., 432 So.2d 1332, 1337 (Fla. 4th DCA), review denied, 441 So.2d 632 (Fla.1983).
Land may be viewed as an assemblage or bundle of rights. According to TDR theory, the right to develop one’s property may be severed from the land and sold, much in the same way as mineral rights are severed and sold. But while mineral rights do not “leave” the land, TDRs are separated from their land source and re-established on a designated recipient site.
Note, “Transferable Development Rights: An Innovative Concept Faces an Uncertain Future In South Florida,” 8 Nova L.J. 201, 202 (1983) (citations omitted).[1]
We conclude that TDRs are not real property within the applicable definition contained in section 192.001(12), Florida Statutes (1987). That section defines real property only as “land, buildings, fixtures, and all other improvements to land.” As was decided in Aurora Group, Ltd. v. Dept. of Revenue, 487 So.2d 1132 (Fla. 3d DCA 1986), this definition should not be expanded to include interests which may be considered to be only the substantial equivalent of land. In Aurora the Third District Court of Appeal, while finding “compelling” the “argument that a lessee’s interest in a long-term lease is for practical purposes substantially the same as the fee simple ownership of the real property,” 487 So.2d at 1133, decided that such an interest could not be assessed as real property under the definition contained in section 192.-001(12).
Thus, we agree with the argument of appellee that TDRs, not having a physical, tangible existence which can be substantially valued as such, should not be classified as real property under section 192.-001(12). This argument is buttressed by section 193.023(2) which requires the property appraiser in making his assessment of the value of real property “to inspect physically the property every 3 years_” Obviously no physical inspection of TDRs themselves is determinative of their value. Furthermore, a legislatively intended restrictiveness of the definition of real property contained in section 193.001(12) is confirmed by a comparison of that section with section 201.02 requiring documentary tax stamps on instruments transferring “real property, or any interest therein.” (Emphasis added.) The emphasized language does not appear in section 192.001(12).
Our conclusion and that of the trial court constitutes a strict construction of the taxing statutes which is required under settled law, see, e.g., State ex rel. Seaboard Air Line R.R. Co. v. Gay, 160 Fla. 445, 451, 35 So.2d 403, 409 (1948); C.D. Utility Corp. v. Maxwell, 189 So.2d 643 (Fla. 4th DCA 1966), including law construing statutes providing for the classification of taxable property, State ex rel. Murray v. Wood, 132 Fla. 325, 181 So. 381 (1938).
Accordingly, we do not consider determinative the property appraiser’s well-made, persuasive argument that TDRs are appurtenant to and not separate from the land in connection with which they are issued and are in effect themselves land because they are a part of the bundle of rights incident thereto. Whether TDRs should be considered for present purposes to be, as the property appraiser argues, appurtenant to that land or, on the other hand, to be separate therefrom, as appellee persuasively argues, is legitimately debatable. Nonetheless, the courts are bound by the definition contained in section 192.001(12). We conclude that if TDRs are to be taxable as real property, that is for the legislature to *1334 provide, not for the courts through a liberal interpretation of the applicable statute.[2]
In any event, we consider more persuasive the argument that TDRs should be considered to be separate from the land incident to which they are issued. The TDR concept itself, as shown by the foregoing Nova Law Journal quotation, depends upon the notion that development rights can be separated from a particular piece of property and used in connection with another piece of property. This separability of TDRs is borne out by the aspects that TDRs have value in and of themselves (two of those involved in this case were sold for $3500 dollars apiece) and that that value is not dependent upon the value of the property incident to which the TDRs were issued. In fact, their value is significantly dependent upon how much they enhance the value of the property to which they are, or are to be, transferred.
We do not agree with the property appraiser’s argument that Lorenc v. Bernards Township, 5 N.J. Tax 39 (1982), aff'd sub nom., Sage v. Bernards Township, 6 N.J. Tax 349 (N.J. Super A.D.1984), calls for a different result in this case. Lorenc held in part that the assessed value of vacant land properly included the value of the TDRs issued incident thereto. Lo-renc does not appear to have directly involved, as does the case at hand, whether TDRs themselves are assessable as real property. In any event, to the extent that Lorenc arguably calls for a different result here, we would disagree.
Nor are we persuaded otherwise by Fudosan v. County of Los Angeles, 268 Cal. Rptr. 356, 219 Cal.App.3d 525 (Cal.Ct.App. 1990). We recognize that the court in Fu-dosan appears to have regarded particular TDRs in themselves as real property in its consideration of the assessed value of property to which those TDRs were transferred. However, the TDRs involved in Fudo-san had not been assessed and classified as real property separate from any other property, as apparently was done in the instant case. Also, it does not appear to have been necessary to the holding in that case, as to the assessed value of the property to which the TDRs were transferred, that the court determine whether or not the TDRs were in themselves real property. Furthermore, the court in Fudosan relied upon California law, which, first, in contrast to Florida law, does not appear from that case to require a strict construction of ad valorem tax statutes and, second, includes applicable statutory language more expansive than that in section 192.001(12) of the Florida Statutes. We need not and do not rule upon the proper consideration of TDRs for ad valorem tax purposes after they have taken on a different status by having been transferred to other property, which occurred in Fudosan and has not occurred under the facts of this case.
Contrary to the property appraiser’s additional argument, the taxpayer’s failure to comply with section 194.171(3) by paying “the amount of the tax which he admits in good faith to be owing” before contesting the assessment did not deprive the trial court of jurisdiction. See Mikos v. Ringling Bros.-Barnum & Bailey Combined Shows, Inc., 475 So.2d 292, 293-94 (Fla. 2d DCA 1985), approved, 497 So.2d 630 (Fla. 1986). Also, in this suit in which it has been determined that property is not assessable we find no merit in the property appraiser’s further argument that the trial court erred in not granting the property appraiser’s motion for judgment on the pleadings because the tax collector was not included as a defendant. Compare section 194.181(3), Florida Statutes (1987) (providing for the tax collector to be defendant “[i]n any suit involving the collection of any tax on property....”).
Affirmed.
SCHOONOVER, C.J., and DANAHY, J., concur.

. For a statutory reference to TDRs as "innovative land development regulations” of local government see section 163.3202(3), Florida Statutes (1987).

. While the property appraiser, citing Straughn v. Sun Oil Co. (Delaware), 345 So.2d 1062 (Fla. 1977), analogizes the ad valorem taxation of mineral rights, the interests involved in that case were found to be taxable pursuant to particular legislation in that regard. See also the Nova Law Journal article quoted above distinguishing mineral rights from TDRs.