JOHN L. SISK & another[1] *vs.* BOARD OF ASSESSORS OF ESSEX.

Suffolk. December 2, 1997. - February 6, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Taxation,* Real estate tax: value; Leased property. *Statute,* Construction. *Real Property,* Tax.

Where G. L. c. 59, § 2B, requires the taxable valuation of public property leased or occupied for other than public purposes to be to the same extent "as if" the user or lessee were the owner in fee, proper valuation of the property is of the entire estate unencumbered by any restriction on occupancy in the applicable lease. [652-654]

There was no merit to taxpayers' assertions that an occupancy restriction in their lease of town-owned property was a governmentally imposed restriction that should be considered for tax valuation purposes. [654-655]

Where taxpayers stipulated to the value of the property in question in proceedings before the Appellate Tax Board, no issue with respect to the valuation method used by the board remained on appeal. [655]

There was no merit to taxpayers' assertion that a decision of the Appellate Tax Board undermined the public policy underlying G. L. c. 59, § 2B. [655-656]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Ieuan G. Mahoney* for the plaintiffs.

*Brian P. Cassidy (Heather S. Ramsey* with him) for the defendant.

LYNCH, J. John L. and Anne L. Sisk (taxpayers) appeal from a decision of the Appellate Tax Board (board), denying their application for abatement of real estate taxes for fiscal year 1996. The board rejected the taxpayers' contention that the defendant assessors' valuation methods resulted in an overvaluation of the property. We granted the taxpayers' application for direct appellate review.

1. *Facts.* The town of Essex (town) owns the land on which

[1] Anne L. Sisk.

the taxpayers have a summer cottage. The taxpayers' lot is in a subdivision of a 130-acre plot, known as Conomo Point and Robbins Island. Currently, the town leases[2] an area of approximately 19.8 acres to various individuals, including the taxpayers. The lease provides that the taxpayers may occupy their dwelling from April 15 to October 15, except under special circumstances.

The taxpayers' house at 113 Conomo Point Road is on a 6,715 square foot lot, which abuts the Essex River. The taxpayers enjoy the benefit of a waterways license, in the town's name, to maintain a float and a ramp on the river. As of January 1, 1995, the assessors valued the land at 113 Conomo Point Road at $177,500, and the building at $80,900, for a total assessed value of $258,400.

The taxpayers concede that, under G. L. c. 59, § 2B, they should be taxed "as if" they were the owners of the property in fee, free from all encumbrances. The taxpayers argue, however, that § 2B does not alter the fair cash value standards of G. L. c. 59, § 38, and that the board contravened those standards by not considering that they are restricted from occupying the premises year round by the lease and by town-imposed restriction. They also argue that the comparable sales used by the assessors to value their property were inapposite because the properties were dissimilar, and finally that the board's decision contravenes public policy.

The assessors argue, and the board agreed, that, because the limit placed on occupation of the property is embodied in a lease, that restriction is not to be considered when determining the value of the property for local taxation purposes. The assessors also contend that the taxpayers' challenge to the comparable sales method of valuation is not properly before this court because it was not raised before the board.[3] We affirm.

2. *General Laws c. 59, § 2B.*[4] The taxpayers, as lessees of

[2]The taxpayers' lease is in accord with a form of lease adopted by the town in 1991 as part of the settlement of an action brought by the tenants of Conomo Point.

[3]The board also argues that the taxpayers lack standing to challenge the assessment.

[4]The taxpayers' initial appeal to the board included an argument that G. L. c. 59, § 2B, was merely an "enabling statute" allowing a municipality to tax individuals who leased from that entity. In this appeal, the taxpayers concede that G. L. c. 59, § 2B, defines the nature of the interest to be taxed.

town-owned land, have an independent statutory duty to pay real estate taxes pursuant to G. L. c. 59, § 2B. Section 2B states, in pertinent part:

> "[R]eal estate owned in fee or otherwise held in trust for the benefit of the United States, the commonwealth, or a county, city or town, or any instrumentality thereof, if . . . leased or occupied for other than public purposes, shall *for the privilege* of such use, lease or occupancy, be *valued, classified, assessed and taxed annually as of January first* to the user, lessee or occupant in the *same manner and to the same extent as if such user, lessee or occupant were the owner thereof in fee*, whether or not there is any agreement by such user, lessee or occupant to pay taxes assessed under this section" (emphasis supplied).

The taxpayers argued before the board that assessments under G. L. c. 59, § 2B, must comply with the "fair cash value" standard of G. L. c. 59, § 38.

The taxpayers assert several grounds to support their position that the assessors did not comply with the fair cash value requirement.[5] Primarily they contend that the assessors' failure to consider that the lease contained restrictions on the use of the property that negatively affected its value violated principles of valuation in these circumstances.[6]

In declining to give effect to the taxpayers' argument that the lease constituted a restriction on the property that negatively affected its value, the board reasoned that consideration of the taxpayers' leasehold interest in the property was contrary to the

---

[5]In their brief to the board, the taxpayers contended that they were entitled to an abatement because the board (1) failed to adhere to the valuation standards requiring "full and fair cash value"; (2) failed to consider restrictions on the taxpayers' use, occupancy, and enjoyment of the property such as "its leasehold nature and the severe restrictions on use and marketability, such as their inability to use their property year round"; and (3) failed to consider that a capitalization of earnings approach, if utilized, would have been appropriate because the board's "use of a market value analysis based upon unrestricted fee simple ownership of *both* interests ignores the existing limitations on both [the taxpayers'] and the Town's use of the property" (emphasis in original).

[6]The taxpayers asserted that the capitalization of income approach supported their position. Both the board and the assessors state that the taxpayers are precluded from raising this issue altogether because they stipulated that the value of the property based on comparable sales of property subject to a lease restriction was the proper valuation.

plain wording of G. L. c. 59, § 2B. We agree. Section 2B clearly states that land leased from a municipality must be "valued, classified, assessed and taxed . . . as if . . . [the] lessee . . . were the owner thereof in fee." Following well-established principles of interpretation, we give effect to the "usual and ordinary" meaning of words in a statute. See *Horst* v. *Commissioner of Revenue*, 389 Mass. 177, 179 (1983). Consideration of the taxpayers' lease when valuing the property contradicts the express language and meaning of G. L. c. 59, § 2B, which requires valuation of the property "as if" the taxpayers were the owner in fee.

Furthermore, it is well established that a tax assessed on the land, however payable, is a tax based on the value of the entire parcel as one entire interest and not merely on a leasehold interest. *Donovan* v. *Haverhill*, 247 Mass. 69, 71 (1923). See *Worcester* v. *Boston*, 179 Mass. 41, 48 (1901); *Parker* v. *Baxter*, 2 Gray 185, 189 (1854). Moreover, we have previously rejected a taxpayers' argument that a lease constituted an encumbrance that diminished the property's value for tax assessment purposes. *Donovan* v. *Haverhill, supra*. There the court stated:

> "Manifestly the entire estate to be taxed may be made up of various tenancies, vested and contingent, as well as leasehold interests, the value of which in many cases it would be impracticable to determine. It is plain a deduction of the surrender value of a long term lease from the market value of the estate, ascertained by a sale of the land free of the lease, in many instances would seriously impair the taxable valuation of the estate considered as a whole; and that the entire estate would escape taxation to the extent of the tax upon the value of the leasehold interest to the estate for the purpose of extinguishment. We do not think a determination of the fair cash valuation of real estate requires the assessors to make such a deduction."

*Id.* at 72. It follows that a proper valuation of the taxpayers' real property requires the assessors to consider the value of the entire estate unencumbered by the lease.

3. *Asserted restriction apart from lease.* The taxpayers' argument that a town-imposed restriction on occupancy diminishes the value of the parcel adds nothing to their contention that the lease restriction on occupancy has the same effect. The taxpay-

ers have not shown that any restriction on occupancy exists apart from the lease. The fact that the town imposed the restriction in the lease does not transform the restriction into a governmentally imposed restriction that should be considered for valuation purposes. Cf. *Boston Edison Co.* v. *Assessors of Watertown*, 387 Mass. 298, 304 (1982); *Community Dev. Co. of Gardner* v. *Assessors of Gardner*, 377 Mass. 351 (1979); *Lodge* v. *Swampscott*, 216 Mass. 260 (1913).

4. *Comparable sales.* We need not address the merits of the taxpayers' contesting the board's use of the comparable sales approach and its determination of value. The taxpayers stipulated to the value of the property.[7] *Reliable Sewing Mach. Co.* v. *Price Sewing Mach. Co.*, 5 Mass. App. Ct. 807, 808 (1977).

5. *Public policy.* The taxpayers assert that the board's decision undermines the public policy behind G. L. c. 59, § 2B, that is, "to overcome the inequities which result" when some residents are exempt from real estate tax burdens by occupying town-owned land. *Atlantic Ref. Co.* v. *Assessors of Newton*, 342 Mass. 200, 204 (1961).[8] Where the clear language of the statute requires that the lease agreement should be ignored for valuation purposes, we find no implied policy suggesting that the

---

[7]The parties stipulated to a statement of facts which states in pertinent part:

"15. For Fiscal Year 1996, the Assessors valued the land at $177,500.00 and the building at $80,900.00 for a total assessed value of $258,400.00, and assessed to the [taxpayers] a tax thereon at the rate of $11.43 per thousand dollar of assessed value in the amount of $2,953.51 . . . . This asessment reflects a valuation as of January 1, 1995.

"16. If the fair cash value of the [taxpayers'] interest in the Property is to be calculated as if they own the Property in fee simple, then the taxable, fair cash value of the Property is $258,400 for 1996.

"17. If the fair cash value of the [taxpayers'] interest in the Property is to be calculated recognizing that the Property is subject to a lease, then the taxable, fair cash value is $130,000 for 1996.

". . .

"23. For the purpose of this litigation, the parties agree that: if the Appellate Tax Board finds in favor of the [taxpayers] the assessment of the Parcel and building thereon is $130,000; and, if the Appellate Tax Board finds in favor of the Assessors the assessment of the Parcel and building thereon is $258,400.00."

[8]In *Atlantic Ref. Co.* v. *Assessors of Newton*, 342 Mass. 200, 204 (1961), we interpreted the legislative intent behind G. L. c. 59, § 3A, predecessor to G. L. c. 59, § 2B.

statute means less than what it explicitly provides. Any disagreement with the statute should be directed to the Legislature.

Accordingly, the decision of the Appellate Tax Board is affirmed.

*So ordered.*