FIRST MAIN STREET CORPORATION *vs.* BOARD OF ASSESSORS OF ACTON (and a companion case[1]).

Nos. 98-P-982 & 98-P-993.

Suffolk. November 16, 1999. - March 23, 2000.

Present: ARMSTRONG, KASS, & RAPOZA, JJ.

*Condominiums,* Development rights, Common area. *Taxation,* Real estate tax: assessment. *Municipal Corporations,* Condominiums. *Real Property,* Condominium. *Statute,* Construction.

Retained development rights to build subsequent phases of a condominium were not "present interests" in real estate, taxable under G. L. c. 59, § 11, and where such reserved parcels were common areas, they were exempt from taxation under G. L. c. 183A, § 14. [27-30]

APPEALS from decisions of the Appellate Tax Board.

*Matthew P. Schaefer* for Board of Assessors of Acton.

*Brian K. French* (*Martin Fantozzi* with him) for First Main Street Corporation & another.

KASS, J. As in the preceding case in this volume,[2] assessors of a town seek to tax retained development rights to build subsequent phases of a condominium. Here, the assessors of Acton have proceeded not by assessing the land to which the development rights pertain, but by treating the development rights as a "present interest" in real estate that is taxable under G. L. c. 59, § 11. We conclude that the limited scope of that taxing statute and the unambiguous prescription and proscription of G. L. c. 183A, § 14, regarding the taxation of common areas of a condominium, do not authorize the tax the assessors have sought to impose. We affirm the decision of the Appellate Tax Board that so held.

1. *Facts.* Under the master deed that on August 9, 1988, cre-

[1]Arbors Limited Partnership *vs.* Board of Assessors of Acton.

[2]*Spinnaker Island & Yacht Club Holding Trust* vs. *Assessors of Hull, ante* 20 (2000).

ated The Arbors at Bellows Farms Condominium (condominium), the declarant subjected to the regime of G. L. c. 183A only the land the declarant called Phase I.[3] There was a reservation of rights to the declarant to build Phases II, III, and IV but these would be on land that, while identified, was not yet included in the condominium. The land associated with Phase I became part of the common area of the condominium as matter of law. G. L. c. 183A, § 1(4). *Spinnaker Island & Yacht Club Holding Trust* v. *Assessors of Hull, ante* 20, 23 (2000). Even as to Phase I, however, the declarant was not, at the time of the creation of the condominium, committed to more than twenty-four condominium units. The declarant reserved the right in the master deed to build subphases of Phase I that would add units to the condominium on its common land. There were three potential subphase areas reserved: Phase 1A, described in the master deed as containing 13.0562 acres; Phase 1B, 8.7549 acres; and Phase 1C, 3.2055 acres.[4]

At the time of the first tax assessment of development rights, which was for fiscal tax year 1995 (July 1, 1994, through June 30, 1995), the developer of the condominium had leapfrogged the Phase 1A and 1B lots and used only the Phase 1C lot, on which it built twenty-five units, so that the condominium stood at an aggregate forty-nine units.[5] The assessors for the tax year in issue valued the right reserved in the master deed to build additional units on the common area demarcated Parcel 1A at $1,100,000 and on Parcel 1B at $700,000. Those valuations produced tax bills of $20,119 and $12,803 for 1A and 1B, respectively. At the time of the tax assessment, the owner of the development rights was First Main Street Corporation (FMSC).

As first assessed, the tax purported to be on real estate, levied pursuant to G. L. c. 59, § 2A(*a*). FMSC applied unsuccessfully to the assessors for tax abatements and lodged appeals with the Appellate Tax Board. While those appeals were pending, the assessors recognized weakness in their position and, proceeding

---

[3]The name of the declarant was Bellows Farm Joint Venture, Inc., a Massachusetts corporation.

[4]The condominium documents use roman numerals for the major phases and arabic numerals for the subphases; we follow that practice.

[5]The master deed contemplated a maximum 237 units.

under G. L. c. 59, § 77, reassessed the development rights.[6] The basis on which the assessors now imposed the tax was that the development rights were a *present interest* in real estate, taxable under G. L. c. 59, § 11. That statute authorizes imposition of a tax on a present interest upon written authorization from the Commissioner of Revenue, an authority that the commissioner conferred on the Acton assessors in this case.[7] Appeals to the Appellate Tax Board on the substituted basis for taxing the retained development rights were consolidated with the earlier appeals. There were also like assessments and appeals for fiscal tax years 1996 and 1997, by which time the development rights had devolved upon Arbors Limited Partnership.[8] The Appellate Tax Board, as noted in the introductory paragraph of this opinion, decided that the authority to tax a present interest in real estate did not trump the exclusion in G. L. c. 183A, § 14, of common areas from separate taxation.

2. *Discussion.* In the *Spinnaker Island* case, *ante* at 23, we rejected the argument of the assessors that the land in which development rights had been retained was not common area of the condominium. In this case, the assessors take the more sophisticated position that the development rights are severable from the underlying fee; that, while the underlying fee is common area, the retained right to build on that soil is not common area and, therefore, is subject to taxation.

That the right to develop future condominium units has economic value is persuasively illustrated by FMSC's sale of those rights in Phase 1A and 1B to Arbors Limited Partnership

[6]General Laws c. 59, § 77, as amended by St. 1945, c. 333, states in part: "Every tax except a poll tax, which is invalid by reason of error or irregularity in the assessment and every tax on land which, by reason of such error or irregularity, does not constitute a valid lien on such land, may, if it has not been paid in full, or if it has been recovered back, or if it has been paid under such circumstances that it can be recovered back, be reassessed by the assessors for the time being, to the just amount to which, on the estate on which, and to the person to whom, it ought at first to have been assessed, whether such person has continued an inhabitant of the town or not."

[7]General Laws c. 59, § 11, as appearing in St. 1939, c. 175, so far as pertinent provides: "[W]henever the commissioner deems it proper he may, in writing, authorize the assessment of taxes upon any present interest in real estate to the owner of such interest on January first . . . ."

[8]In disposing of the 1996 and 1997 cases, the Appellate Tax Board adopted the findings and rulings it had made in the 1995 case. We consolidated the appeals lodged with us from the various Appellate Tax Board cases.

for $972,000.[9] Everything of value, however, is not necessarily subject to taxation, unless the Legislature makes it so. An option to acquire real estate, for example, has value but, in the current property tax structure, is not taxable. To see if there is any legislative sanction for the taxation of development rights in the common area of a condominium, we examine G. L. c. 59, § 11, on which the assessors rely.

*Squantum Gardens, Inc.* v. *Assessors of Quincy*, 335 Mass. 440, 448-450 (1957), involved the use of G. L. c. 59, § 11, to tax a reversionary interest on a sublease as a present interest. The court commented that the phrase "present interest," as used in the statute, was "somewhat ambiguous," *id*. at 448, but decided that, in any event, the reversionary interest was a *future interest* because the right to possession of the land had to await the end of a currently existing (i.e., present) right to possess that land. *Id*. at 448-449. Restatement of Property § 153 & comment e (1936). In that sense, the right to build additional phases of a condominium is less obviously a future interest because the holder of the right does not have to wait until some current possessory right expires. On the other hand, there is no immediate right of the holder of the right to build additional phases to possess the common area. Rather, like the holder of an option — and the development right greatly resembles an option — the holder of the development right must take certain steps, notably, build the additional buildings and facilities and amend the master deed, before the expansion phase land is the holder's to deal with. An option to acquire a fee interest has been considered a future, rather than present, interest. *Certified Corp.* v. *GTE Prod. Corp.*, 392 Mass. 821, 823-826 (1984). The status of the development right as a present interest within the meaning of G. L. c. 59, § 11, is doubtful and, to that degree, runs up against the well-worn principle, brought out from under the rug in the *Squantum Gardens* case, that: "The right to tax must be plainly conferred by the statute. It is not to be implied. Doubts are resolved in favor of the taxpayer." *Cabot* v. *Commissioner of Corps. & Taxn.*, 267 Mass. 338, 340 (1929).

Two additional — and more fundamental — difficulties confront the assessors. The first is that the condominium expansion land encompassed in Parcel 1A and Parcel 1B is common area of the condominium and, as such, is taxed pro rata to the

---

[9]See 4 Powell, Real Property § 34.11[2], at 34-153 (1999) (the "right to further develop is considered a valuable and tangible interest").

current unit owners in the condominium. For that very reason, common area may not, under G. L. c. 183A, § 14, be taxed other than proportionately to the unit owners. The statute says:

> "Each unit and its interest in the common areas and facilities shall be considered an individual parcel of real estate for the assessment and collection of real estate taxes, but the common areas and facilities, the building and the condominium shall not be deemed to be a taxable parcel."

Second, under the Massachusetts tax statutes, real estate generally is to be assessed as a whole unit, not on the basis of separate interests in it. *Donovan* v. *Haverhill*, 247 Mass. 69, 72 (1923). *Crocker-McElwain Co.* v. *Assessors of Holyoke*, 296 Mass. 338, 344-345 (1937). *Boston* v. *Quincy Mkt. Cold Storage & Warehouse Co.*, 312 Mass. 638, 649 (1942). *Sisk* v. *Assessors of Essex*, 426 Mass. 651, 654 (1998). As the unit owners have already been taxed for their interest in the common area land, the assessors may not tax another slice of the same real property to others.

While we come to the conclusion that, under existing statutory and decisional tax law, the right to develop future phases of a condominium on land of that condominium may not be taxed as a present interest under G. L. c. 59, § 11, we are not unmindful that this result represents a dissonance as a matter of economics or sound tax policy. The development right, as earlier noted, has economic value — demonstrably considerable in this case — and it would be reasonable fiscal policy to tax such a right. That has been recognized in the Uniform Condominium Act (UCA), which provides: "Any portion of the common elements for which the declarant has reserved any development right must be separately taxed and assessed against the declarant, and the declarant alone is liable for payment of those taxes." Uniform Condominium Act (1980), 7 U.L.A. (Pt. II) § 1-105(c), at 225 (1997). Comment 2 to the UCA explains the purpose of the provision: "Even if real estate subject to development rights is a part of the condominium and lawfully 'owned' by the unit owners in common, it is in fact an asset of the declarant . . . ."[10] Although the UCA may serve as a guide to the reasonableness of developer control of the structure,

---

[10] A number of States have adopted § 1-105(c) of the UCA or a provision that obtains the same result. See, e.g., Ala. Code § 35-8A-105(c) (1991);

management, and marketing of a condominium, see *Barclay* v. *DeVeau*, 384 Mass. 676, 685 n.17 (1981), it cannot override the existing tax law of Massachusetts. That is a task for the Legislature.

Accordingly, the decisions of the Appellate Tax Board are affirmed.

*So ordered.*

Alaska Stat. § 34.08.720(c) (Michie 1998); Ariz. Rev. Stat. Ann. § 33-1204(C) (West 1990); Conn. Gen. Stat. § 47-204(b)(2) (1999); Me. Rev. Stat. Ann. tit. 33, § 1601-105(c) (West 1999); Mo. Rev. Stat. § 448.1-105(3) (1986); Neb. Rev. Stat. § 76-829(b) (1996); Nev. Rev. Stat. § 116.1105(3) (1999); N.M. Stat. Ann. § 47-7A-5(B) (Michie 1995); N.C. Gen. Stat. § 47C-1-105(c) (1999); Or. Rev. Stat. § 94-728(3) (1990); 68 Pa. Cons. Stat. Ann. § 3212(c) (West 1994); R.I. Gen. Laws § 34-36.1-1.05(c) (1995); Tex. Prop. Code Ann. § 82.005(b) (West 1995); Vt. Stat. Ann. tit. 27A, § 1-105(b) (1998); Va. Code Ann. § 55-79.42 (Michie 1995); Wash. Rev. Code Ann. § 64-34.040(3) (West 1994); W. Va. Code § 36B-1-105(c) (1997). Cf. Colo. Rev. Stat. § 38-33.3-105 (1999) (adopting substantially all of § 1-105 of the UCA, but not the provision for the taxation of retained development rights); Minn. Stat. § 515B.1-105 (1998) (same).