2014 COA 6

**VILLAGE AT TREEHOUSE, INC.,**
Petitioner–Appellant,

v.

**PROPERTY TAX ADMINISTRATOR,**
Respondent–Appellee,

and

**Board of Assessment Appeals, Appellee.**

Court of Appeals No. 12CA0988

Colorado Court of Appeals,
Div. II.

Announced January 16, 2014

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

Board of Assessment Appeals No. 57632

Letofsky & Dombrowski, Inc., Steven F. Letofsky, Frisco, Colorado, for Petitioner–Appellant.

John W. Suthers, Attorney General, Claudia Brett Goldin, First Assistant Attorney General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Denver, Colorado, for Respondent–Appellee

Opinion by JUDGE TERRY

¶ 1 Petitioner, The Village at Treehouse, Inc. (the Village), appeals an order of the Board of Assessment Appeals (BAA), which found that the development rights the Village had acquired to build new condominium units constituted a taxable interest in real property for ad valorem tax purposes. As an issue of first impression, we decide that such development rights are taxable, and therefore affirm.

## I. Background

¶ 2 The material facts in this case are not disputed. The Village paid more than one million dollars to purchase the development rights from the Treehouse Condominium Association, Inc. (the HOA). The development rights gave the Village the right to construct up to nineteen condominium units at the Treehouse Condominiums, a complex that was originally built in the 1970s in the Wildernest subdivision in Summit County, Colorado.

¶ 3 The development rights were created by an amendment to the Treehouse Condominiums' declaration in 2006 and conveyed to the Village by the HOA in 2008 in a document entitled "Warranty and Assignment of Supplemental Development Rights" (the Assignment). Since the date of the Assignment, four units have been constructed, incorporated into the Treehouse Condominiums, and placed on the tax rolls. The Village conveyed a fee interest in those units and kept the proceeds from their

sale. It retained the development rights to the remaining fifteen units, and those rights cannot expire.

¶ 4 For the 2009 and 2010 tax years, the Summit County Assessor created a separate tax schedule for the development rights and assessed the Village. After the Village requested an abatement and refund of the tax, the assessment was cancelled, and the Summit County Board of County Commissioners approved the cancellation.

¶ 5 Pursuant to sections 39–1–113 and 39–2–116, C.R.S.2013, the Property Tax Administrator (Administrator) was required to review the abatement and refund of the property taxes because they were in excess of $10,000. After review, the Administrator denied the refund, and the Village petitioned the BAA to reverse the Administrator's decision. The BAA held a hearing and issued a written order upholding the Administrator's decision. The BAA concluded that the development rights were "permanently and irrevocably severed" and constituted taxable interests in real property for ad valorem tax purposes. This appeal followed.

## II. Discussion

¶ 6 The Village argues that the development rights conveyed to it by the Assignment are not taxable because (1) they are not interests in real property; (2) they are already included in the value of the Treehouse Condominiums common elements; and (3) taxing them would violate the unit assessment rule, section 39–1–106, C.R.S.2013. We are not persuaded.

### A. Standard of Review

¶ 7 It is the function of the BAA to weigh the evidence and resolve any conflicts therein. *Marsico Capital Mgmt., LLC v. Denver Bd. of Cnty. Commis.*, 2013 COA 90, ¶ 7, —— P.3d ——. We may set aside the BAA's decision if it is "unsupported by competent evidence or reflects a failure to abide by the statutory scheme for calculating property tax assessments." *Id.* The interpretation of a property tax statute is a question of law that we review de novo. *Id.* at ¶ 8.

### B. Analysis

¶ 8 We conclude that the development rights are property interests subject to taxation. And because the Village's remaining arguments are unavailing, we conclude that the BAA did not err in its ruling.

#### 1. The Development Rights Are Taxable Property Interests

¶ 9 The Village argues that the BAA erred in upholding the Administrator's denial of the petition for abatement because the development rights conveyed to the Village by the HOA do not constitute taxable interests in real property. We disagree.

¶ 10 "The Colorado Constitution directs that all real and personal property, as defined by the legislature, *must be taxed* unless it is exempted in accordance with law." *Bd. of Cnty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1275 (Colo.2001) (citing Colo. Const. art. X, §§ 3(1)(a), 6) (emphasis added); *see also* § 39–1–102(16), C.R.S.2013 (" 'Taxable property' means all property, real and personal, not expressly exempted from taxation by law."). The legislature may exempt property from taxation only if that property falls within certain categories specified in the constitution, categories which are not at issue here. *Vail Assocs.*, 19 P.3d at 1275–76.

¶ 11 Under Colorado's property tax statutes, "real property" is defined, in part, as "[a]ll lands or interests in lands to which title or the right of title has been acquired from the government of the United States or from sovereign authority ratified by treaties entered into by the United States, or from the state." § 39–1–102(14)(a), C.R.S.2013.

¶ 12 "Real property" is synonymous with "real estate." *See Black's Law Dictionary* 1378 (9th ed. 2009). Under the Colorado Common Interest Ownership Act (CCIOA), which applies to condominium complexes such as the one at issue here, "real estate" is defined as:

any leasehold or other estate or interest in, over, or under land, including structures, fixtures, and other improvements and interests that, by custom, usage, or law, pass with a conveyance of land though not de-

scribed in the contract of sale or instrument of conveyance. "Real estate" includes parcels with or without horizontal boundaries and spaces that may be filled with air or water.

§ 38–33.3–103(25), C.R.S.2013 (emphasis added).

¶ 13 An "interest" means a "legal share in something," including "all or part of a legal or equitable claim to or right in property." *Black's Law Dictionary* 885 (9th ed. 2009).

¶ 14 The Village argues that its development rights cannot be classified as interests in real property because (1) the rights are more accurately classified as future rights, contract rights, or incorporeal hereditaments; and (2) the General Assembly has never defined such interests as "real property" subject to taxation. We reject these contentions.

¶ 15 The Assignment employs strong and definitive language of conveyance of property rights. Under the Assignment, the HOA "bargains, sells, assigns, conveys, transfers[,] and grants to [the Village], forever, all right, title, and interest in and to the [development rights] to nineteen (19) Condominium Units . . . to be added to and included as part of the Treehouse Condominiums . . . ." It states that the development rights conveyed to the Village "constitute a real property interest." Under the Assignment, the Village acquired "the right to create, construct, grant, sell, transfer[,] and assign the [Condominium Units], free and clear of any interest of [the HOA], on or over that portion of the Common Elements" set aside for new construction, as well as the right to further convey the development rights.

¶ 16 The status of the Assignment as a conveyance of property rights is confirmed by the fact that it was recorded with the Summit County clerk and recorder.

¶ 17 We conclude that the Assignment conveyed a taxable interest in real property. The Assignment, in effect, severed the development rights from the Treehouse Condominiums common elements and conveyed them to the Village. Though the Village denies that such a severance occurred, its admission that only the Village—and not the HOA or the unit owners—has the right to exercise the development rights, is a clear demonstration that those rights have been severed from the common elements. Indeed, the Village admits in its briefs that, once it bought the development rights, those rights "no longer represented a component of the value of the Treehouse common elements." *Cf. Radke v. Union Pac. R.R. Co.*, 138 Colo. 189, 209, 334 P.2d 1077, 1088 (1959) (indicating that severance of surface and mineral estates must be expressed by clear and distinct language of the conveyance).

¶ 18 Because the Village acquired interests in land, taxation of the development rights was required under sections 39–1–102(16) and 39–1–102(14)(a).

¶ 19 We also reject the Village's argument, based on *Radke*, that the Assignment conveyed something less than a property right. That case is distinguishable. The license in *Radke* was conditional, conveying the right to remove minerals only if they were found, and the license was "subject to revocation before its exercise by the owner of the fee-simple estate." 138 Colo. at 211, 334 P.2d at 1089. Unlike the license in *Radke*, the rights conveyed here were assignable, unconditional, and not subject to revocation.

¶ 20 Moreover, the Village's characterization of the development rights as an incorporeal hereditament does not support its argument that they are not taxable property rights. Incorporeal hereditaments include interests in land. An incorporeal hereditament is a "right issuing out of a thing corporate, whether *real* or personal. . . . It . . . can exist only in contemplation." *Id.* at 206, 334 P.2d at 1086 (emphasis added); *see also Bd. of Cnty. Comm'rs v. Park Cnty. Sportsmen's Ranch, LLP*, 45 P.3d 693, 719 (Colo.2002) (Kourlis, J., concurring in part and dissenting in part) ("The legislature has specified that 'land' should be defined broadly to include a coextensive meaning with 'the terms "land," "tenements," and "hereditaments" and as embracing all mining claims and other claims, and chattels real.'" (quoting § 38–30–150, C.R.S.2013)); *Black's Law Dictionary* 794 (9th ed. 2009) (defining "incorporeal hereditament" as "an intangible right in land, such as an easement"). Final-

ly, as discussed above, the language of the Assignment indicates that the Village received property rights more substantial than a "mere right over the land of another." *See Black's Law Dictionary* 794 (9th ed. 2009) (some incorporeal hereditaments " 'can never become corporeal hereditaments but are merely rights over the land of another' " (quoting Robert E. Megarry & M.P. Thompson, *A Manual of the Law of Real Property* 361 (6th ed. 1993))).

¶ 21 We further reject the Village's assertion that its ownership interest is not taxable because it is not a fee simple interest. We need not decide whether it is a fee simple interest, because even if it is not, it is still taxable as an interest in land. § 39-1-102(14)(a); *cf. Mitsui Fudosan (U.S.A.), Inc. v. Cnty. of Los Angeles,* 219 Cal.App.3d 525, 268 Cal.Rptr. 356, 359 (1990) (terms of transfer of development rights, as well as price paid to purchase the rights, "amply support[ ] an inference that the entire fee interest in [the rights] was transferred").

¶ 22 We are persuaded by the reasoning of the California Court of Appeal in *Mitsui Fudosan. See id.* There, the court ruled that transferrable development rights were taxable because they "are appropriately viewed as one of the fractional interests in the complex bundle of rights arising from the ownership of land." *Id.* at 357–58. As in *Mitsui Fudosan,* the transfer here bears many of "the hallmarks of a transfer of real property," including the receipt of valuable consideration in return for the divestment of an interest in real property. *Id.* at 358.

¶ 23 The Village contends that, in order for the development rights to become taxable, they must, at the very least, be mapped, incorporated into the condominium project by declaration, and allocated an interest in the common elements. We disagree. There is no provision of Colorado law that would impose such a requirement for an interest in real property to be taxable.

¶ 24 Although the Village cites *Saddle Ridge Corp. v. Board of Review,* 325 Wis.2d 29, 784 N.W.2d 527, 540 (2010), as support for its position, that case actually supports our ruling. There, as here, a developer (Saddle Ridge) sought to avoid payment of property taxes on rights it had purchased to develop condominium units. The Wisconsin Supreme Court rejected Saddle Ridge's argument that it did not have to pay taxes until it actually built the units. We agree with that court's view that imposing taxes only on built units, and not on development rights to build such units, would provide an improper tax loophole to the developer. *See id.* at 538–39. It is irrelevant to our analysis that the unbuilt units in the Wisconsin case had already been declared in the condominium declaration, while here there has not been such a declaration of the unbuilt units.

¶ 25 We are not persuaded by the Village's citation of cases from Florida and Massachusetts, holding that development rights were not taxable under the taxation statutes of those states. *See Wilkinson v. St. Jude Harbors, Inc.,* 570 So.2d 1332, 1333 (Fla.Dist.Ct. App.1990); *First Main St. Corp. v. Bd. of Assessors,* 49 Mass.App.Ct. 25, 725 N.E.2d 1076, 1078 (2000). The statutes described in those cases provided for taxation of real property, but, unlike Colorado's taxation statute, they did not provide for taxation of *interests in* real property. *See Wilkinson,* 570 So.2d at 1333; *First Main St. Corp.,* 725 N.E.2d at 1079. Florida's settled law, unlike Colorado's, required strict construction of taxing statutes. *Compare Wilkinson,* 570 So.2d at 1333, *with Vail Assocs.,* 19 P.3d at 1275 ("The Colorado Constitution directs that all real and personal property, as defined by the legislature, must be taxed unless it is exempted in accordance with law."). We note that in *First Main St. Corp.,* the appellate court recognized that although "it would be reasonable fiscal policy to tax" such development rights, the court was constrained by "the existing tax law of Massachusetts." 725 N.E.2d at 1080.

¶ 26 Finally, the Village argues that interests in real property are not taxable unless categorized as taxable by the General Assembly. However, the General Assembly enacted section 39-1-102(16), which states that *all* interests in real property must be taxed unless exempted. *See also Vail Assocs.,* 19 P.3d at 1275. Because the development rights are interests in real property, no special authorization by the General Assembly is

required to subject those rights to taxation. *See* § 39–1–102(16); *Vail Assocs.*, 19 P.3d at 1275.

¶ 27 Accordingly, the BAA did not err in determining that the development rights are interests in real property subject to taxation.

### 2. The Development Rights Were Severed from the Common Elements

■ ¶ 28 The Village next argues that taxation of the development rights violates sections 39–1–103(10) and 38–33.3–105, C.R.S. 2013. We disagree.

¶ 29 Section 39–1–103(10) provides that "common elements within a common interest community ... shall be appraised and valued pursuant to the provisions of section 38–33.3–105, C.R.S." Section 38–33.3–105(2), C.R.S. 2013, provides, in part, that "[i]n a condominium ... with common elements, each unit that has been created, together with its interest in the common elements, constitutes for all purposes a separate parcel of real estate and must be separately assessed and taxed." Furthermore, in a condominium, "[t] he valuation of the common elements shall be assessed proportionately to each unit. . . ." *Id.*

¶ 30 Assuming, without deciding, that the development rights conveyed to the Village previously formed part of the Treehouse Condominiums' common elements, we conclude that the Assignment evinced the intent to sever title to the development rights from the Condominiums, including severance from the common elements. Thus, taxing the development rights separately from the common elements does not contravene section 39–1–103(10) or section 38–33.3–105.

### 3. Taxation of the Development Rights Does Not Violate the Unit Assessment Rule

■ ¶ 31 Finally, the Village argues that the unit assessment rule precludes separate taxation of the development rights. We disagree.

■ ¶ 32 The unit assessment rule requires that all estates in a unit of real prop-

erty be assessed together, and that the real estate as an entirety be assessed to the owner of the fee free of the ownerships of lesser estates such as leasehold interests. *City & Cnty. of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 358 (Colo.1993). The rule is codified in section 39–1–106, which states, in pertinent part:

> For purposes of property taxation, it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom.

¶ 33 The Assignment severed the development rights from the Treehouse Condominiums, and conveyed *full* rights to develop and sell the nineteen condominium units in question, rights which were bargained away "forever." Because the Assignment created separate interests in real estate as between the interests of the individual unit owners, on the one hand, and those of the Village, on the other hand, separate taxation of those interests does not violate the unit assessment rule. *See* § 38–33.3–103(25) (" 'Real estate' includes parcels with or without horizontal boundaries and spaces that may be filled with air or water.").

¶ 34 The order is affirmed.

JUDGE CASEBOLT and JUDGE VOGT * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2013.